THE PENNSYLVANIA RAILROAD COMPANY

*v.*

WILLIAM J. CONNELL.

*Filed at Ottawa October 31, 1884.*

1. CARRIERS OF PASSENGERS—*through coupon tickets over distinct lines of railroad—right of passengers to be carried—duty and liability of the several companies.* Through tickets in the form of coupons, sold to a passenger by one railroad company, entitling him to pass over successive connecting lines of road, in the absence of an express agreement create no contract with the company selling the same, to carry him beyond the line of its own road, but they are distinct tickets for each road, sold by the first company as agent for the others, so far as the passenger is concerned.

2. A person intending to take passage by railroad from Omaha to New York, purchased at the former place, from the Wabash, St. Louis and Pacific Railway Company, a through coupon ticket, purporting to give the right of carriage from Omaha to New York over the several lines intermediate and connecting between those two points, one of the connecting lines being the Pennsylvania railroad. There was printed on the face of the ticket: "In selling this ticket for passage over other roads, this company acts only as agent for them, and assumes no responsibility beyond its own line." The coupon over the Pennsylvania railroad declared, "Issued by the Wabash, St. Louis and Pacific railway, on account of the Pennsylvania railroad," which the company owning the latter road refused to accept, and on refusal to pay the regular fare demanded, ejected the passenger from the train: *Held*, in a suit by the passenger against the latter company, that the first named company contracted with the passenger only as agent of the defendant company.

3. Where a coupon ticket has been sold calling for passage over several distinct lines of railroad, the rights of the passenger, and the duty and responsibility of the several companies over whose roads the passenger is entitled to a passage, are the same as if he had purchased a ticket at the office of each company constituting the through line.

4. SAME—*remedy of passenger for being wrongfully put off a train— and of his rights when his ticket is refused, and payment of fare demanded.* Where a conductor of a railway company, acting under instructions from his superior, refuses to accept a ticket issued by another company as agent of the former, and demands full fare, the passenger, if his ticket was issued by authority, may pay the fare again, and recover of the company requiring payment the sum paid, as for a breach of contract, or he may refuse to pay, and leave the train when so ordered by the conductor, and sue and recover of the company all damages sustained in consequence of his expulsion from the train; but if he refuses to leave, he can not recover for the force used by the conductor in putting him off, when no more force is used than necessary, and the expulsion is not wanton or willful.

5. SAME—*measure of damages—in suit to recover damages for expulsion of a passenger from a train.* A passenger who has rightfully bought a ticket for his passage over a line of railroad, and such ticket is refused, and who is expelled from the cars on refusal to pay fare to the conductor, will be entitled to recover of the railway company the amount of the cost of a ticket from the place where he was ejected to the place called for in his ticket, and also such damages as he may have sustained on account of delay by his expulsion, and all additional expenses necessarily occasioned thereby, as well as reasonable damages for the indignity of being expelled from the train, but not damages for personal injuries received in putting him off, unless the expulsion was malicious or wanton, as he might have avoided such injury by leaving the train when so ordered. In such case it would be his duty to pay, or leave the train, and sue for damages if he should choose to do so.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

Messrs. WILLARD & DRIGGS, for the appellant:

Appellee's contract for passage from Omaha to New York was with the Wabash, St. Louis and Pacific Railway Company. As between the appellee and said company, it assumed that the intermediate carriers were its agents, and would lend their agency in the fulfillment of the contract thus made. *Railroad Co.* v. *Copeland,* 24 Ill. 332; *Railroad Co.* v. *Johnson,* 34 id. 389; *Railroad Co.* v. *Frankenberg,* 54 id. 88; *Railroad Co.* v. *Fahey,* 52 id. 81; *Railway Co.* v. *Smith,* 74 id. 197; *Railway Co.* v. *Packet Co.* 70 id. 217; *Railway Co.* v. *Wilcox,* 84 id. 239; *Railroad Co.* v. *Campbell,* 36 Ohio St. 647; *Candee* v. *Railroad Co.* 21 Wis. 582; *Argan* v. *Railroad Co.* 132 Mass. 423; Shearman & Redfield on Negligence, sec. 272.

In such case there is no difference in principle between an undertaking for the carriage of a passenger and an undertaking for the carriage of freight. *Railroad Co.* v. *Fahey,* 52 Ill. 81; *Quimby* v. *Vanderbilt,* 17 N. Y. 306.

A refusal by an agent to act as such, does not give a stranger a right of action against the agent. *Railroad Co.* v. *Fahey,* 52 Ill. 81; *Railway Co.* v. *Packet Co.* 70 id. 217; Story on Agency, secs. 308–310.

A railway company has a legal right to make reasonable rules for the government of its agents and employes in the transaction of its business, and a rule which requires a conductor to demand a passage ticket or money in payment of fare, is a reasonable rule. *Railroad Co.* v. *Flagg,* 43 Ill. 364; *Railroad Co.* v. *Whittemore,* id. 420; *Railway Co.* v. *Williams,* 55 id. 185; *Railroad Co.* v. *Griffin,* 68 id. 499; *Car Co.* v. *Reed,* 75 id. 125; Thompson on Carriers of Passengers, 335, 340; Angell on Highways, secs. 371–378.

The conductor acting in good faith in demanding fare, appellee should have paid, or left the train and sued for damages. *Railroad Co.* v. *Griffin*, 68 Ill. 499; *Car Co.* v. *Reed*, 75 id. 125; *Hull* v. *Railroad Co.* 9 A. & E. Ry. Cases, 348.

Upon the foregoing question we desire to refer to two points, viz: First, whether, under the circumstances of this case, the appellee can recover any damages which he himself caused by refusing to pay fare in obedience to the conductor's request, whereby he subjected himself to expulsion and consequent delay in his journey, and damages which he himself caused by his forcible resistance to the efforts of the conductor to expel him; and second, whether this is a case for the assessment of exemplary or punitive damages. In addition to the *Griffin*, *Reed* and *Hall* cases cited upon this point, we cite the following: *Railway Co.* v. *Pierce*, 47 Mich. 277; *Railway Co.* v. *Scurr*, 6 A. & E. Ry. Cases, 341; Thompson on Carriers of Passengers, secs. 5, 375; *Railway Co.* v. *Ford*, 53 Texas, 634; *Townsend* v. *Railway Co.* 56 N. Y. 298; *Shelton* v. *Railway Co.* 29 Ohio St. 214; *Frederick* v. *Railway Co.* 37 Mich. 342.

Mr. W. J. HYNES, and Mr. JOHN I. REDICK, for the appellee:

The Wabash, St. Louis and Pacific Railway Company, in selling the ticket, acted as the agent for the defendant and other companies over whose lines a passage was called for. Schouler's Bailments, including Carriers, 592; 2 Redfield on Railways, sec. 201; Thompson on Carriers of Passengers, 434; *Railroad Co.* v. *Fahey*, 52 Ill. 81; *Horton* v. *Railroad Co.* 114 Mass. 44; *Sprague* v. *Smith*, 29 Vt. 421; *Brooke* v. *Railroad Co.* 15 Mich. 332; *Knight* v. *Railroad Co.* 56 Maine, 234; *Ellsworth* v. *Tartt*, 26 Ala. 733; *Melnor* v. *Railroad Co.* 53 N. Y. 304; *Railroad Co.* v. *Sprayberry*, 9 Heisk. 852; *Hart* v. *Railroad Co.* 4 Seld. 37; *Blake* v. *Railroad Co.* 7 H. & N. 987; *Berringer* v. *Railroad Co.* 4 C. P. 163; *Austin* v. *Railroad Co.* L. R. 2 Q. B. 442; *Pickard* v. *Taylor*, 35 Ark.

402; *Foulkes* v. *Railroad Co.* 48 L. J. (N. S.) 554; 2 Redfield's Leading Am. Railroad Cases, 458; *Johnson* v. *Railroad Co.* 70 Pa. 357; *Schopman* v. *Railroad Co.* 9 Cush. 24; *Hood* v. *Railroad Co.* 22 Conn. 1; *Glassco* v. *Railroad Co.* 36 Barb. 557.

The carrier is bound to make good what the ticket imports on its face, and the passenger is not bound by any rule or usage of the company not so expressed, unless he has notice of the same. *Hall* v. *Railroad Co.* 15 Fed. Rep. 57; *Maroney* v. *Railroad Co.* 106 Mass. 160.

It is well established that vindictive or exemplary damages may be given against corporations for the tortious or wrongful acts of their agents. 1 Sutherland on Damages, 716; Field on Damages, secs. 85, 601; Sedgwick on Damages, 36; Wood on Master and Servant, 589; 1 Redfield on Railways, 514, and 2 id. 272; *Railroad Co.* v. *Dalby*, 19 Ill. 353; *Manufacturing Co.* v. *Holdfodt*, 86 Ill. 456; *Reeder* v. *Purdy*, 48 id. 261; *Goddard* v. *Railroad Co.* 57 Maine, 202; *Hansen* v. *Railroad Co.* 62 id. 84; *Railroad Co.* v. *Rogers*, 38 Ind. 116; *Brown* v. *Railroad Co.* 7 Fed. Rep. 51; *Roberts* v. *Mason*, 10 Ohio St. 278.


Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was an action brought by William J. Connell, in the Superior Court of Cook county, against the Pennsylvania Railroad Company, to recover damages for a forcible expulsion from appellant's car, at Tacona, a station a few miles east of West Philadelphia, on the 16th day of December, 1880. On a trial of the cause before a jury, the plaintiff recovered a verdict, and judgment for $15,000, which was affirmed in the Appellate Court.

It appears from the evidence introduced on the trial, that the Wabash, St. Louis and Pacific Railway Company operated a line of railroad from Omaha to St. Louis, and that appellant operated a line of road from Philadelphia to New York.

The Wabash railway company had for several years been in the habit of selling coupon tickets to passengers, from Omaha to New York, over its own line and the lines of the Ohio and Mississippi, the Marietta and Cincinnati, the Baltimore and Ohio, the Philadelphia, Wilmington and Baltimore, and appellant's line. On the first day of December, 1880, appellant sent the Wabash company a message by telegraph, as follows:

*"December 1, 1880.*
*"George H. Daniels, W., St. L. and P. Ry., St. Louis, Mo.:*

"On receipt hereof, please discontinue sale of tickets to all points north and east of Philadelphia reading *via* Baltimore and Ohio railroad and this line. Please answer.

L. P. Farmer."

The Wabash company received the message, and replied as follows: "Tickets reading *via* Baltimore and Ohio railroad to all points east and north of Philadelphia have been ordered off sale." The Wabash notified the Baltimore and Ohio road of the action of appellant, and in reply received the following:

"Baltimore, Md., *December 2, 1880.*
*"To Geo. H. Daniels, Wabash Ry., St. L.:*

"Please get up, quickly, tickets New York and points east by B. and O., and Boundbrook route trains run Chicago and Cin'ti, N. Y., without change. Coupons should read Balto., Phila., Boundbrook R. R., Phila. and Reading R. R., Phila. and Boundbrook Central R. R., New Jersey, Boundbrook, N. Y. Until you get them on, continue sales Penn. R. R., tickets by B. and O., reporting entire proportion east Baltimore to B. and O.; we are exchanging, and will protect. Answer. L. M. Cole."

On the 7th day of December, 1880, the Wabash company, at Omaha, sold appellee, who had no notice of the action of appellant, a coupon ticket from Omaha to New York, reading *via* Baltimore and Ohio and appellant's line, for the sum of

$38.05, which was paid. Appellee left Omaha on the 7th day of December; arrived at Washington on the 9th; he remained there a few days, and then resumed his journey; reached Philadelphia on the 16th, where he took passage in appellant's cars for New York. When the conductor came into the car in which appellee had taken passage, his ticket purchased at Omaha was presented, and refused. The conductor notified appellee that the ticket was not good on that road, and demanded fare, which appellee refused to pay. The train was stopped at Tacona, a regular station, and appellee requested to leave the train, which he refused to do. The conductor then put him off, using such force as seemed necessary for that purpose.

Several questions were raised in regard to the ruling of the court on the admission of evidence, but as they are of minor importance we will not consume time in their discussion, but will proceed to the main points in the case, which are presented by the decision of the court in the instructions to the jury.

It is insisted by appellant that the Wabash company, in the sale of the through ticket from Omaha to New York, contracted as a principal, and not as an agent, with appellee, to carry him over appellant's line from Philadelphia to New York, and that the refusal of appellant to accept appellee's ticket was merely a refusal to act as agent of the Wabash company, and a suit by a third person does not lie against an agent for the reason the agent refuses to act for the principal. The court refused the instructions of appellant presenting this view of the law, and gave instructions for appellee presenting the view that in the sale of the through ticket the Wabash company acted as agent of appellant. The ticket, upon its face, gives no sanction to appellant's position. It says: "In selling this ticket for passage over other roads, this company acts only as agent for them, and assumes no responsibility beyond its own line." The coupon over appel-

lant's line declared, "Issued by the Wabash, St. Louis and Pacific railway, on account of Pennsylvania railroad." From these statements upon the ticket and coupons purchased by appellee, which was the contract between the parties, and showed their intentions, it is manifest that the Wabash company, by its contract with appellee, only assumed to act as agent in the sale of tickets over the connecting lines, and intended to assume the responsibility of an agent, and none other.

But aside from the language of the ticket, we think the law on this subject is well settled. We think the rule is well stated by Redfield. He says: "As the general duty of common carriers of passengers is different from the common carriers of goods, so the implied contract, resulting from the sale of through tickets for passengers, is different. In the case of the carriers of goods and the baggage of passengers, we have seen that taking the pay and giving tickets or checks through, binds the first company, ordinarily, for the entire route. But in regard to carrying passengers the rule is different, we apprehend. These through tickets, in the form of coupons, which are purchased of the first company, and which entitle the person holding them to pass over successive roads, with ordinary passenger baggage, sometimes for thousands of miles, in this country import, commonly, no contract with the first company to carry such person beyond the line of their own road. They are to be regarded as distinct tickets for each road, sold by the first company as agent for the others, so far as the passenger is concerned." (2 Redfield on Law of Railways, sec. 201.) The same rule is announced in *Harlan* v. *Eastern Railroad Co.* 114 Mass. 44, and in *Pennsylvania Railroad Co.* v. *Schwarzenberger,* 45 Pa. St. 208. The same principle was announced by this court in *Chicago and Rock Island Railroad Co.* v. *Fahey,* 52 Ill. 81. It is true a company selling a through ticket might, by contract, bind itself to be responsible for the entire route, but such liability can not

arise, nor can it be established, from the fact, alone, that a through ticket has been sold. Something more is required to create a liability of such a character.

Several cases (decisions of this court) have been cited by appellant, to the effect that where a carrier receives goods marked for shipment to a particular place beyond the line of the carrier, in the absence of an express contract limiting the liability the law will imply an undertaking on the part of the carrier to transport and deliver the goods at the place to which they are marked, and in such case, where loss occurs, the carrier receiving the goods is liable to the shipper. Actions for loss of freight are entirely different from an action of this character, and the cases which control the one do not control the other. Where a coupon ticket has been sold, as here, the rights of the passenger, and the duty and responsibility of the several companies over whose roads the passenger has procured a passage, are the same as they would have been if the passenger had purchased a ticket at the office of each company constituting the through line. (2 Redfield's Am. Ry. Cases, 465, note.) If we are correct in this position, the instructions of the court on this branch of the case are not erroneous.

But the instructions in regard to the measure of damages present a more serious question. In regard to the damages, the court, in substance, directed the jury that the plaintiff was entitled to recover compensation for loss of time, or actual pecuniary loss, as the result of being forcibly ejected from the train; also, such sum as will compensate for injuries to the person resulting from being forcibly ejected from the train, and for bodily pain. The conductor had been ordered by his superiors not to receive a ticket for fare over the road like the one presented by appellee, and when, in the discharge of his duty as conductor, he called upon appellee for fare, and the ticket was presented, he notified appellee that he could not receive the ticket, and at the same time informed him

that he must pay fare to New York. This, appellee refused to do, and then the conductor notified him that he must pay the regular fare or leave the train. Appellee refused to pay or leave the car, and the conductor stopped the train at a regular station and put appellee off by force, but it does not appear that more force was used than was necessary. This was, in substance, the transaction. If it be true that appellee, by virtue of his ticket, was entitled to be carried over appellant's road, the question presented is, whether he can recover damages for being forcibly expelled from the train, or was it his duty, when notified by the conductor that he would not receive the ticket, to pay his fare under protest, or leave the train and hold the company responsible for the expulsion, without compelling the conductor to resort to force. Had appellee paid the fare demanded, he might have sued the company and recovered for a breach of the contract. Had he left the train when the conductor refused to receive the ticket and ordered him to leave, he might have sued and recovered for all damages sustained in consequence of the act of the conductor expelling him from the train; but can he recover for the force used by the conductor, which he by his own act induced the conductor to resort to in order to put him off the train?

A question similar in principle to the one involved in this case arose in *Chicago, Burlington and Quincy Railroad Co.* v. *Griffin,* 68 Ill. 499, and it was there said: "If a passenger pays his fare to a certain station, and the ticket agent inadvertently gives him a ticket to an intermediate station, the demand of a fare a second time by the conductor will be a breach of the implied contract on the part of the company to carry him to the proper station. By paying on such demand, his action will be as complete as if he resists the demand and suffers himself to be ejected, and his ejection in such case will add nothing to his cause of action. It is his duty to pay the fare demanded, and if the company fails to make suitable

reparation for the indignity, he can maintain his appropriate action." In *Pullman Palace Car Co.* v. *Reed,* 75 Ill. 125, Reed had purchased a ticket for a particular berth in a sleeping car, and had lost it after entering the car. He refused to pay a second time, and was forcibly expelled, after producing proof that he had purchased a ticket for a berth. A verdict of $3000 was held to be excessive, and it was also held that the plaintiff was only entitled to recover the price paid for the ticket, and reasonable compensation for the trouble and inconvenience he suffered by being deprived of a berth in the sleeping car. See, also, *Hall* v. *Memphis and Charleston Railroad Co.* 9 Am. & Eng. Ry. C. 349.

In the case first cited, it was expressly held by this court that where the passenger paid on the demand of the conductor, his action will be as complete as if he resists and suffers himself to be ejected, and his ejection in such case will add nothing to his cause of action. We entertain no doubt that appellee was entitled to recover the amount of the cost of a ticket from the place he was ejected from the cars, to New York. He was also entitled to recover such damages as he sustained on account of the delay occasioned by the expulsion, and all additional expense necessarily occasioned thereby, as well as reasonable damages for the indignity in being expelled from the train ; but we perceive no ground upon which he can recover for personal injuries received, unless the expulsion was malicious or wanton. When the conductor demanded that appellee should pay fare or leave the train, he would have been justified in refusing to pay fare, and in leaving the train on the command of the conductor, and had he done so he would have received no personal injuries, and might then have brought his action and recovered, as before stated ; but when he refused to leave the train, and thus compelled the conductor to resort to force, he can not recover for an injury which he voluntarily brought upon himself. The conductor was ordered by his superior not to receive a ticket like

the one presented. This order he was bound to obey, and so far as appears he acted in good faith, and when appellee was notified by the conductor that his ticket was not good, and would not be received, it was his duty to leave the train in a peaceable manner and hold the company responsible for the consequences, rather than resist or undertake to retain his place on the train by force. A train crowded with passengers,—often women and children,—is no place for a quarrel or a fight between a conductor and a passenger, and it would be unwise, and dangerous to the traveling public, to adopt any rule which might encourage a resort to violence on a train of cars. The conductor must have the supervision and control of his train, and a demand on his part for fare should be obeyed, or the passenger should in a peaceable manner leave the train, and seek redress in the courts, where he will find a complete remedy for every indignity offered, and for all damages sustained.

The instructions in reference to the damages we regard erroneous, and for this error the judgment will be reversed and the cause remanded.  ·  *Judgment reversed.*

Mr. JUSTICE MULKEY, dissenting.