## The Chicago and Alton Railroad Company

*v.*

## Edward A. Mulford et al.

*Filed at Ottawa May 12, 1896—Rehearing denied October 13, 1896.*

1. CARRIERS—*railroad company not liable for refusal of connecting company to honor ticket sold by it as agent.* A railroad company which sells a quantity of coupon tickets over its own and connecting roads, to brokers, under the representation that they can make a through rate less than the regular through rate by adding the local rate beyond the termination of such tickets, is not liable to such brokers because of the refusal of a connecting company to honor such tickets, as, in the absence of any contract other than the sale of tickets, the coupons are to be regarded as distinct tickets for each road, sold by the first company as agent for the others. (*Illinois Central Railroad Co.* v. *Copeland,* 24 Ill. 332, distinguished.)

2. SAME—*what statements in ticket do not constitute it a contract of carriage by the selling company.* The statements on tickets sold by one railroad company bearing coupons good for connecting roads, "Issued by" such company, and "Good for one first-class passage," do not constitute a contract by the selling company to transport the holder over the connecting roads, so as to make it liable for failure of the latter roads to honor the tickets.

3. SAME—*coupon tickets sold by a carrier for use on line of another carrier need not expressly limit liability of seller.* It is not necessary, to relieve a railroad company selling tickets bearing coupons for transportation over connecting roads from liability for failure of such connecting roads to honor such coupons, that the tickets should contain anything to negative a contract by the selling company for the entire journey, as there is no presumption that it acts otherwise than as agent for the connecting companies.

4. SAME—*extent of implied contract of carrier selling coupons for connecting road.* A railroad company, by selling tickets bearing coupons for transportation over connecting lines, does not impliedly contract that such tickets will be recognized and honored by such connecting lines, but merely that it is the agent of such lines and has authority to issue such tickets.

5. SAME—*connecting carriers do not become partners by selling tickets over each other's lines.* The fact that each of two connecting railroads sells through tickets, taking its own share of the price according to its mileage, does not constitute them partners, so as to render the selling road liable for failure of the connecting road to honor such tickets.

*Chicago & Alton Railroad Co.* v. *Mulford,* 59 Ill. App. 479, reversed.

Appeal from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. Francis Adams, Judge, presiding.

William E. Hughes, and William Brown, for appellant:

In the absence of a contract making it responsible, the carrier selling the tickets acts merely as the agent of the other lines, and there is no extra terminal liability. The rights of the passenger and the duty and responsibilities of the several companies over whose roads he is entitled to passage are the same as if he had purchased a ticket at the office of each company constituting the through line. *Railroad Co.* v. *Connell*, 112 Ill. 295; 18 Am. Ry. Cas. 339; 54 Am. Rep. 238; *Railroad Co.* v. *Fahey*, 52 Ill. 81; *Knight* v. *Railroad Co.* 56 Me. 235; *Furstenheim* v. *Railroad Co.* 9 Heisk. 238; *Mosher* v. *Railroad Co.* 127 U. S. 390; *Railroad Co.* v. *Sprayberry*, 9 Heisk. 852; *Hood* v. *Railroad Co.* 22 Conn. 1; *Young* v. *Railroad Co.* 115 Pa. St. 112; *Hartan* v. *Railroad Co.* 114 Mass. 44; *Sprague* v. *Smith*, 29 Vt. 421; *Railroad Co.* v. *Schwarzenberger*, 45 Pa. St. 208; *Poole* v. *Railroad Co.* 35 Hun, 29; *Milnor* v. *Railroad Co.* 59 N. Y. 365; *Kessler* v. *Railroad Co.* 61 id. 538; *Lundy* v. *Railroad Co.* 66 Cal. 191.

There is a clear distinction between the liability of a carrier receiving freight, or even the baggage of passengers which it takes into its own keeping to be sent over a connecting line, and that of a carrier who sells coupon tickets to be used on its own line and also on a connecting railway. 2 Redfield on Railways, (6th ed.) 201.

The Supreme Court of Illinois, nearly twenty-five years after deciding the *Copeland case*, (which will be quoted by counsel for plaintiffs,) deliberately adopted the above rule laid down by Redfield, in the case of *Pennsylvania Railroad Co.* v. *Connell*, 112 Ill. 295.

If the arrangement existing between the associated lines of carriers amounts to a partnership, each will be liable to the passenger for the loss or injury occurring anywhere along the line of transportation ; but the arrangement must be in reality a partnership, with the incident of community of profit. The fact that each sells through tickets will not constitute them partners. 25 Am. & Eng. Ency. of Law, 1087, 1088; *Walland* v. *Elkins*, 1 Stark. 272; *Laugher* v. *Pointer*, 5 B. & C. 547; *Wylde* v. *Railroad Co.* 53 N. Y. 157; *Cobb* v. *Abbott*, 14 Pick. 289; *Hartan* v. *Railroad Co.* 114 Mass. 44.

We contend that the tickets in controversy, under the great weight of the authorities, were simply vouchers showing that the railroad fare for twenty-five hundred persons had been paid to the two companies whose names appeared on the face of those tickets. *Burdick* v. *People*, 149 Ill. 600; 25 Am. & Eng. Ency. of Law, 1074, 1075, and cases cited in note 1.

Jno. S. Cooper, and Ira C. Wood, for appellees:

The following are some of the English cases which hold that the through ticket is to be considered in evidence as to whether the contract was a through contract or not, and that there is no distinction between the contract to carry the passenger, as to the length of the route, and the contract for the carriage of his baggage. *Mytton* v. *Railroad Co.* 4 H. & N. 615; *Railroad Co.* v. *Blake*, 7 id. 987; *Buckston* v. *Railway Co.* 3 Q. B. 549; *Muschamp* v. *Railway Co.* 8 M. & W. 430 ; *Thomas* v. *Rymoney*, 6 Q. B. 266; *John* v. *Bacon*, 5 C. P. (L. R.) 437.

We cite below some of the American cases on the subject: *Railroad Co.* v. *Combs*, 70 Ga. 533; *Croft* v. *Railroad Co.* 1 McArthur, 492; *Railroad Co.* v. *Copeland*, 24 Ill. 332; *Wilson* v. *Railroad Co.* 21 Gratt. 654; *Candee* v. *Railroad Co.* 21 Wis. 582; *Railroad Co.* v. *Campbell*, 36 Ohio St. 647; *Hawley* v. *Screven*, 62 Ga. 347; *Wolff* v. *Railroad Co.* 68 id. 653; *Maskos* v. *Steamship Co.* 11 Fed. Rep. 608; *Carter* v. *Peck*, 4

Sneed, 203; *Furstenheim* v. *Railroad Co.* 9 Heisk. 239; *Weed* v. *Railroad Co.* 9 Wend. 534; *Carey* v. *Railroad Co.* 29 Barb. 35; *Quimby* v. *Vanderbilt*, 17 N. Y. 306; *Williams* v. *Vanderbilt*, 28 id. 217.

Where parties agree to share in the profits of a business, the law will infer a partnership between them in the business to which the agreement refers. But this presumption may be disproved. It is *prima facie* evidence, and will control until rebutted. *Lockwood* v. *Doane*, 107 Ill. 235; *Harter* v. *Wheeler*, 49 N. H. 9; *Wylde* v. *Railroad Co.* 53 N. Y. 156; *Walland* v. *Elkins*, 1 Stark. 272; *Fromont* v. *Coupland*, 2 Bing. 170; *Bostwick* v. *Champion*, 11 Wend. 571; 18 id. 175; *Cobb* v. *Abbott*, 14 Pick. 289.

Railroad companies may become partners in joint carriage. *Swift* v. *Steamship Co.* 106 N. Y. 206; *Aigen* v. *Railroad Co.* 132 Mass. 423; *Gass* v. *Railroad Co.* 99 N. Y. 220; *Block* v. *Railroad Co.* 139 Mass. 308; *Railroad Co.* v. *Trippe*, 42 Ark. 465; *Insurance Co.* v. *Railroad Co.* 104 U. S. 146; Hutchinson on Carriers, sec. 158, *et seq.*

Mr. Justice Cartwright delivered the opinion of the court:

Appellees recovered a judgment of $10,854.60 in the circuit court of Cook county, in an action of assumpsit against appellant, for the value of certain coupons for passage over the Lake Erie and Western railway and the Ohio Central railroad, attached to passenger tickets sold by appellant to appellees. From that judgment an appeal was taken by appellant to the Appellate Court, which affirmed the judgment.

The cause was tried before the court without a jury, and at the conclusion of the trial the defendant entered its motion to exclude the evidence for the plaintiffs. This motion was denied, and an exception was taken. The motion was in the nature of a demurrer to the evidence, and that it was proper and in apt time is not questioned. It admitted all that the evidence proved or

tended to prove on the part of the plaintiffs, but if there was no evidence legally tending to prove a cause of action against the defendant it should have been sustained.

The undisputed evidence tended to prove the following facts: Plaintiffs were railroad ticket brokers, having offices in various cities of the United States. In 1880 Mulford had charge of their office in Chicago and Mc-Kenzie of the one in St. Louis. In the fall of that year there was what was called a "rate war," in which defendant was engaged, and tickets were being sold from Kansas City, Missouri, to different points on the Lake Erie and Western railway for one dollar. The Wabash Railway Company was selling tickets from Kansas City eastward at nominal rates, thereby taking traffic from the defendant and also from the Lake Erie and Western. Anticipating that the rate war would soon end, the defendant desired, in that event, to be able to compete successfully with other companies, and decided to place large blocks of tickets on the market prior to the anticipated advance of rates. Mulford was in Indianapolis for the purpose of establishing a ticket office there, when an agent of defendant called upon him and proposed a sale of tickets from Kansas City east, stating that defendant would give plaintiffs rates through to Toledo and Sandusky so low, that by adding the local rate they could make a through rate to New York or Boston that would be less than the regular through rate. Thereafter negotiations were carried on, the result of which was that plaintiffs purchased 2500 tickets, for the aggregate sum of $24,957.50, from Kansas City over defendant's road to Bloomington, and from that place over the Lake Erie and Western railway, and a part of them also over the Ohio Central railroad. These tickets were issued by the defendant under an agreement with the Lake Erie and Western Railway Company and by authority from that road. The Lake Erie and Western was given authority by the defendant to sell tickets westward from points

on its road over defendant's road, and defendant was authorized to sell tickets from Kansas City eastward over the Lake Erie and Western. The defendant reported the sale to the Lake Erie and Western, and settled with that company for the proportion of the mileage to which it was entitled under the arrangement. After the purchase of the tickets plaintiffs put them on sale in their offices. The rate war ended in the spring or summer of 1882. Plaintiffs sold the tickets to their customers, and they were received and honored by the respective roads until June 6, 1885, when, the Lake Erie and Western having been placed in the hands of a receiver, he was ordered by the United States court for the Southern District of Illinois, the District of Indiana and the Northern District of Ohio, to refuse to accept for passage over the road any of the tickets in question. Plaintiffs had sold, prior to that time, about 1181 tickets and had on hand about 1319. After the refusal of the receiver of the Lake Erie and Western railway to honor the tickets the coupons for that road beçame worthless, and those for the Ohio Central could not be used because they were first in order, being attached at the head of the ticket. After that time plaintiffs sold that part of the tickets between Kansas City and Bloomington, and the other coupons were lost to them. In this way they disposed of all the tickets except samples for use in the suit. There was evidence on the part of the defendant that plaintiffs were informed that defendant was acting by authority of the Lake Erie and Western, and as agent for that company, in the sale of the tickets, and that an assurance of such authority was given at the request of plaintiffs; but this was denied by plaintiffs, and on this motion, being a controverted question, their version of the transaction is to be adopted as to such question, and it is to be considered that they had no such notice.

The question raised by the motion is, whether these facts rendered defendant legally liable for the conse-

quences of the refusal of the receiver of the Lake Erie and Western to perform the contract.

In the English courts it is held that the sale of a ticket by a railroad company over its own and connecting lines is evidence of a contract for through carriage to the destination, and that the company making the sale thereby enters into a contract that renders itself liable for the full journey. In this country the decisions are not harmonious, but the general rule is stated in the American and English Encyclopedia of Law, (vol. 25, p. 1085,) as follows: "But the doctrine, founded in reason and best supported by the authorities in this country, is, that in the absence of a contract making it responsible the carrier selling the tickets acts merely as the agent of the other lines, and there is no extra terminal liability, the rights of the passenger and the duties and responsibilities of the several companies over whose roads he is entitled to passage being the same as if he had purchased a ticket at the office of each company constituting the through line." The rule is also stated in Redfield on the Law of Railways, (vol. 2, sec. 185,) as follows: "These through tickets in the form of coupons, which are purchased of the first company, and which entitle the persons holding them to pass over successive roads with ordinary passenger baggage, sometimes for thousands of miles, in this country import, commonly, no contract with the first company to carry such person beyond the line of their own road. They are to be regarded as distinct tickets for each road, sold by the first company as agent for the others, so far as the passenger is concerned," etc. This rule has been adopted by this court. *Pennsylvania Railroad Co.* v. *Connell,* 112 Ill. 295; *Chicago and Alton Railroad Co.* v. *Dumser,* 161 id. 190.

It is insisted that this court, in the case of *Illinois Central Railroad Co.* v. *Copeland,* 24 Ill. 332, held that a railroad company selling through tickets over its own and other roads became responsible for the carriage of the passen-

ger to the end of the route. That was a suit for the value
of baggage lost, which was checked by the railroad com-
pany from Chicago to St. Louis. A brass check was given
for the trunk, deliverable at St. Louis, and the company
giving the check was held liable. In the subsequent case
of *Chicago and Rock Island Railroad Co.* v. *Fahey*, 52 Ill. 81,
where a ticket was given for passage over several roads,
it was held that the company that lost the baggage would
be liable, and that the recognition of the ticket was a
recognition of the agency of the road that sold it. In that
case the rule, as now existing, with reference to passen-
gers was recognized with regard to baggage. But a dis-
tinction has been made between the liability in the case
of baggage and passengers, and the liability for the loss
of baggage has sometimes been held to be the same as
in other cases of the carriage of goods. (2 Redfield on
Law of Railways, sec. 185.) And there may be reason-
able grounds for such a distinction, although the carriage
of the baggage is merely incident to that of the pas-
senger. In such case the railroad company takes the
baggage into its own possession and control, and a check
is given, which may be regarded as a single contract on
the part of the company to deliver the goods at the place
of destination. Besides, necessity might require such a
rule, since any other would impose upon the passenger
the necessity of looking after his baggage and examining
it at each change from one road to another. It would
often be practically impossible to do that, or to prove
where or by whose negligence the loss occurred. It is
not necessary in this case to determine what the rule
would be with respect to a loss of baggage, as it is not
involved. But it is settled what the contract is in the
case of passengers, and if it is otherwise in the case of
baggage it rests upon some distinction arising out of the
nature of the different contracts.

If, then, the defendant could be held liable as princi-
pal, it must be because of some contract other than that

162—34

arising from the mere sale of tickets. The only thing outside of the tickets themselves upon which any claim is based that there was a contract by defendant for carriage over the other roads, consists in the statement made in Indianapolis by the agent of defendant, and given above. This was offered as an inducement to the plaintiffs to buy the tickets, but it had no tendency to alter the contract implied by the law. There was nothing in the statement as to defendant being principal or agent in the transaction, and nothing which could lead plaintiffs to suppose that the contract was other than the law would imply. The cheapness of the tickets could not even raise a supposition as to the character in which they were issued or sold. Whatever the price may have been, the plaintiffs knew that the tickets, when issued, would have coupons, and the last one, to be first taken off, would read over the Chicago and Alton, and the next over the Lake Erie and Western, and a part of them would also have coupons over the Ohio Central. They admittedly knew that the Lake Erie and Western railway was an independent line, starting from Bloomington and going to Muncie, Indiana, as testified, and that it was not run or managed by the defendant.

But it is said that the tickets themselves were such as to render the defendant liable. On the heading of the tickets was the following: "Issued by Chicago & Alton R. R.—Good for one first-class passage to station stamped in margin of attached coupon,"—and it is urged that this makes the ticket a contract to transport the holder over the Lake Erie and Western. The coupons for passage over the Lake Erie and Western contained the following: "Issued by Chicago & Alton R. R.—Lake Erie & Western R. R." At the bottom of the coupons was the following: "Via C. & A., L. E. & W." On the coupons for passage over the Ohio Central railroad there was, "Issued by Chicago & Alton R. R.—Ohio Central Railroad," and on the bottom of the coupons, "Via C. & A., L. E. & W.,

O. C." The statement on the tickets and coupons, "Issued by the Chicago & Alton Railroad," added nothing to the fact. They were so issued to the knowledge of all the parties, and the statement did not tend to show, in any manner, in what capacity they were so issued. We do not see how the statement, "Good for one first-class passage," affected the contract. Ordinarily a ticket is a mere token or voucher. (*Burdick* v. *People*, 149 Ill. 600; *Chicago and Alton Railroad Co.* v. *Dumser, supra.*) It is necessary in any ticket to show what it is for. These tickets were issued for first-class passage from Kansas City to the designated station, and this clause was placed on the tickets to indicate for what purpose they were intended to be used. There was, in addition, the names of the connecting railroads upon the coupons, showing over what roads they were good, and there was nothing upon the tickets regarding the contract which could change the rule or presumption of law.

It is suggested that there is nothing on the ticket to negative the claim that defendant contracted for the entire journey. But it is not necessary that there should be anything of that kind, unless there is some presumption to the contrary to be negatived. The only purpose of a statement that the ticket is sold by the company as agent for the other companies would be to meet and overcome some presumption that the defendant acted in a different capacity. Under the rule before stated, in force in this State, such a statement is wholly unnecessary, and if made would add nothing to the contract. It is never necessary to insert in a contract that which the law implies. It might operate as a notice, but is not necessary. In some cases, where it has been held that the seller of the ticket contracts for the entire journey, the fact that there was a limitation or notice upon the ticket that the seller acted merely as agent and was not responsible beyond its own line was not regarded as binding upon the passenger. In such cases the contract has been held not

limited by any statement or printed matter on the ticket not signed by the passenger. There is no evidence proving or tending to prove that there was any contract except such as would be implied by law.

It is urged, however, that the defendant is liable under the rule of law stated, although it incurred no extra terminal responsibility by the sale of tickets. The claim under this head is, that defendant undertook, in a sale of the tickets, that they should be recognized and honored by the Lake Erie and Western Railway Company as good for transportation over its line. The only way in which the Lake Erie and Western Railway Company could recognize and honor the tickets was by carrying the passengers,—in other words, by performing the contract. And this would be making an agent responsible that his principal should recognize the agency and carry out the contract. That is not the liability of an agent. An agent does impliedly contract that he is an agent and has authority to do the act. But in this case there is no question that such was the fact. The tickets were issued by authority of the Lake Erie and Western and were recognized and honored by it, and they were refused only after four years and a half from their purchase, and then not on the ground that they were issued without authority or because the defendant was not a duly constituted agent. There was no breach of the implied contract that the agency existed.

The case of *Hudson* v. *Kansas Pacific Railroad Co.* 3 McCr. (U. S. Cir. Ct.) 249, is cited upon that question. In that case tickets had been issued by the Missouri Pacific Railway Company for passage over its road, with coupons over the defendant's road and the Denver and Rio Grande, and the defendant company, which did not sell the tickets, was held liable because the Denver and Rio Grande refused to carry the passengers. On motion for a new trial, HALLETT, J., said the evidence showed that the coupons on the Rio Grande could not be used and were

not intended to be used when issued, and defendant knew it, and for some time had redeemed them on presentation by paying the cost of a ticket or furnishing a ticket in place of a coupon. There was, in fact, no agency, and defendant had recognized a liability by redeeming the coupons as presented. That decision did not rest upon the ground that the company selling the ticket was the principal, and we do not regard it as sustaining the claim made in this case. Under the proof in that case one of the connecting companies for which a coupon was attached to the tickets was treated as liable on the whole contract. That defendant might have made a contract for the carriage of passengers over the entire line, where its road was a part of the route, is not doubted, but the evidence did not tend to prove that any such contract had been made.

It is suggested that the defendant might be liable on the ground of a partnership between it and the Lake Erie and Western. But the evidence does not tend to prove partnership. The fact that each road sells through tickets, taking its own share of the price according to its mileage, does not constitute them partners. (25 Am. & Eng. Ency. of Law, 1087.) And corporations cannot enter into partnership with each other. *Bishop* v. *American Preservers Co.* 157 Ill. 284.

There were other questions in the case, but as there was no evidence tending to prove any contract different from that implied by law, the conclusion that defendant was not liable cannot be escaped, and the motion of the defendant should have been sustained.

The judgments of the Appellate and circuit courts will be reversed and the cause remanded.

*Reversed and remanded.*