## People of the State of Illionis, Defendant in Error, v. Sigmund Hart, Plaintiff in Error.

### Gen. No. 14,409.

1. AMUSEMENT—*right of ticket-holder in place of.* A ticket-holder
who has left a place of amusement where a public exhibition is being
held, has no right to re-enter the same after the closing hours thereof.

2. AMUSEMENT—*when person properly ejected from place of.* A
ticket-holder who has exhausted his rights with respect to entering
and remaining in a place of amusement, is properly ejected therefrom
when he refuses to leave upon request.

3. ASSAULT AND BATTERY—*what justifiable.* If a person improper-

ly refuses upon request to leave a place of amusement his ejectment is proper and an assault and battery is not committed if no greater force than is necessary is used in ejecting him.

Assault and battery. Error to the Municipal Court of Chicago; the Hon. J. R. NEWCOMER, Judge, presiding. Heard in this court at the March term, 1908. Reversed. Opinion filed July 14, 1910.

THORNTON & CHANCELLOR, for plaintiff in error.

JOHN J. HEALY, F. L. BARNETT and HOWARD O. SPROGLE, for defendant in error.

MR. JUSTICE FREEMAN delivered the opinion of the court.

Defendant prosecutes this writ of error to reverse a judgment of the Municipal Court of Chicago finding him guilty of assault and battery on the complaint of Elton Lower, and imposing a fine.

Complainant testified that on the night of December 2, 1907, he attended an automobile exhibition at the Coliseum. He bought tickets of admission for himself and wife at the Wabash avenue entrance and gave them up when admitted to the building. About 9:30 o'clock in the evening he and his wife went through the back entrance of the Coliseum along a covered way to the Armory building, where a part of the exhibition was displayed. He testifies that about ten o'clock or a little before he and his wife started to leave the Armory intending to return through the alley to the Coliseum, and that he asked "one of the door tenders" if a ticket was needed to get back into the Coliseum and that the man replied, "Oh no, its too late now; just follow the crowd around." Reaching the back door of the Coliseum, complainant's wife went through the vestibule first. Inside of the door she was asked by defendant, the doorkeeper at that entrance, for a ticket and replied that she had none. Complainant coming in inquired, as he says, "What's the matter here?" The defendant answered "You can't get in here without a ticket." To this complainant replied "Well, I am here." Defendant said to him, "Well, you will have to go out." Complainant

replied, "Well, I came in this way and I have an engagement and I want to go out the Wabash entrance." Defendant said, "Well, you will have to get out." Complainant states that defendant "held both of my wrists, and I believe I said to him. 'Son, you are making a mistake. You will make a whole lot of trouble if you put me out of here, because I have paid my admission and I have a right to go through the Coliseum;' " that defendant "said something about orders;" that complainant saw two men coming down the aisle toward him and that one Beaumont, who it appears from the evidence was the superintendent in charge of the building, said "There he is, put him out." He says defendant took no part at that time, but that other men forcibly put him out through the door; that he resisted but did not receive "any great physical damage," although he says his clothing was disarranged his overcoat torn and his leg bruised.

It is evident from complainant's testimony that he refused to leave the building when told by the doorkeeper and others to do so and that he resisted when he was about to be ejected. His wife testifies: "One had hold on each side of him. They pushed him to the door. My husband was holding his feet down trying to stay there." Another of complainant's witnesses testifies when asked if complainant tried to stay there in the building, "He surely did. I saw that fellow grab hold of him and another fellow just like this (indicating) and he said, 'Go on, get out of here.' That's how they treated him * * * I said he had his hands against the door jamb resisting and that is true." In stating reasons for finding the defendant guilty the trial judge after stating that complainant asked for a ticket to go back to the Coliseum when leaving the Armory and was told by the doorkeeper there that he did not need one, that they would let him in without a ticket, said, "Now the doorkeeper himself does not deny that statement." In this the court seems to have been under a misapprehension, for the doorkeeper there expressly testifies according to the abstract that he did not state to complainant nor to any one else that evening that they did not need any ticket to go back into the Coliseum; but on the con-

trary that he told the crowd the alley entrance to the Coliseum was closed and that he instructed them to pass out through the front entrance of the Armory. It is suggested that complainant's reason for wishing to go through the Coliseum was that he had an automobile in front. He had delayed too long however. The hour of closing had come and after being informed of that fact complainant insisted upon remaining and going into the Coliseum. By his conduct he insisted upon being ejected by force, as he was.

It is urged by complainant's attorneys that having purchased tickets, complainant and his wife had "more than a mere license;" that "their right is more in the nature of a lease entitling them to peaceable ingress and egress." Citing Drew v. Peer, 93 Pa. 234–242. We are unable to perceive wherein that case has any application to the facts in the case at bar. Complainant had no license merely because he had originally bought tickets of admission to remain in or re-enter the buildings or either of them after the hour for closing the exhibition for the evening had arrived. In Pennsylvania R. R. Co. v. Connell, 112 Ill. 295, the conductor of the railway train had been ordered by his superiors not to receive a ticket for fare over the road like the one presented by the appellee; and when the ticket was presented notified appellee that he, the conductor, could not receive the ticket and that appellee must pay the regular fare or leave the train. This appellee refused to do and the conductor stopped the train at a regular station and put him off, using no more force than was necessary. The court says: "Had he left the train when the conductor refused to receive the ticket and ordered him to leave, he might have sued and recovered for all damages sustained in consequence of the act of the conductor expelling him from the train; but can he recover for the force used by the conductor, which he by his own act induced the conductor to resort to, in order to put him off the train?" It is held that, "when the conductor demanded that appellee should pay fare or leave the train, appellee would have been justified in refusing to pay fare, and in leaving the train on the command of the conductor; and had he done so he would have re-

ceived no personal injuries and might then have brought his action and recovered as before stated; but when he refused to leave the train and thus compelled the conductor to resort to force, he can not recover for an injury which he voluntarily brought upon himself." It is further said that a train crowded with passengers—often women and children—is no place for a quarrel or fight between a conductor and a passenger, "and it would be unwise and dangerous to the travelling public to adopt any rule which might encourage .a resort to violence on a train of cars." The principle thus stated is applicable in the case at bar. The complainant had no right to demand re-admission to the Coliseum after he had voluntarily left that and the Armory building also, and when the hour for closing had arrived. It appears from the evidence that others were seeking such re-admission and were all alike being refused. There was access through the alley to the street and the front of the building. The entrance or exit to a public exhibition or place of amusement is not the place for a quarrel or a physical struggle, even if complainant had any right to demand re-entrance to the Coliseum, which he had not. When he refused to leave the building after having been requested so to do, those in charge acting under orders from their superiors had a right to expel complainant, using such force as was reasonably necessary. To the same effect is what is said in Kiley v. Chicago City Ry. Co., 189 Ill. 384–390.

It is urged by complainant's counsel that more force was used than was necessary. As we have already stated, the complainant had no right to refuse to leave the building when requested by the defendant. When he so refused and when as his own witness testified he endeavored to resist removal by holding back with hands and feet against the door way he invited and made necessary the use of more force than would otherwise have been required to put him out. In Paxton v. Boyer, 67 Ill. 132–135, which was an action of trespass for an assault and battery, it is said: "The principle is announced (citing cases) that a person is not liable for an unintentional injury resulting from a lawful act, where neither

negligence nor folly is imputable to him who does the act, and that the burden of proving the negligence or folly where the act is lawful is upon the plaintiff." The evidence fails to show that more force than was rendered necessary by complainant's misconduct was used in putting him out of the building which he refused to leave when lawfully requested.

The judgment of the Municipal Court is reversed.

*Reversed.*