<hr />

## THE PULLMAN PALACE CAR COMPANY

### *v.*

### WILLIAM REED.

1. EXCESSIVE DAMAGES — *expelling passenger from sleeping berth who had lost his ticket.* Where a passenger had purchased a ticket for a particular berth in a sleeping car and had lost the same, but gave satisfactory assurance that he had purchased the same, was expelled from the sleeping car, there being no abusive language or personal violence used by the conductor in charge, in an honest purpose to execute a reasonable rule of the company, but through a mistaken judgment, it was *held* that a verdict, in a suit by the passenger against the company, for $3,000 damages was grossly excessive, and that in such a case, where men might honestly differ in opinion, and where the passenger might have kept his berth by paying the fare of $1.50, but would not, he was only entitled to recover the price he paid for his ticket and a reasonable compensation for the trouble and inconvenience he suffered by being deprived of his berth in the sleeping car.

2. Where the expulsion of a passenger from a sleeping car is done under a mistaken sense of duty, and the facts do not show it was done willfully, maliciously or wantonly, so as to justify the imposition of exemplary damages, the damages awarded should, in some degree, be proportionate to the magnitude and character of the actual wrong done.

3. CARRIERS OF PASSENGERS — *rules requiring tickets.* Carriers of passengers may lawfully require those seeking to be carried, to purchase tickets when convenient facilities to that end are afforded, to exhibit them to the person designated by the carrier for that purpose, and surrender them after securing their seats, when required by the person in charge. Such requirements are reasonable ones to protect the carrier against imposition and the fraud of its employees.

APPEAL from the Circuit Court of Lee county; the Hon. WILLIAM W. HEATON, Judge, presiding.

Messrs. WALKER, DEXTER & SMITH, for the appellant.

Messrs. EUSTACE, BARGE & DIXON, for the appellee.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

This was case, by appellee against appellant, for ejecting him from one of its sleeping cars. The verdict of the jury was for appellee, assessing his damages at $3,000. Motion for a new trial was made by appellant, and overruled by the court, and judgment given on the verdict, from which this appeal is prosecuted.

The principal error insisted on in argument is, that the damages, as assessed, are excessive.

The facts connected with the alleged wrong, as detailed by appellee in his examination, are these: On the 21st of January, 1873, appellee purchased at appellant's ticket office in Chicago, a sleeping car ticket for berth No. 4 in appellant's car known as No. 184, from Chicago to Crestline, by way of the Pittsburgh, Fort Wayne and Chicago railroad, having previously purchased a passenger ticket entitling him to be thus carried. The price paid for the sleeping car ticket was $1.50. The train to which the sleeping car was attached left Chicago about nine o'clock in the evening, and arrived at Crestline between seven

and eight o'clock next morning. As appellee first entered the sleeping car, he exhibited his ticket to the porter of the car, who went into the car with him and showed him his berth. He seems shortly afterwards to have gone into the water-closet, and, upon returning, he took off his overcoat and boots, sat down, and engaged in reading until the conductor of the sleeping car came around for tickets. He then commenced looking for his ticket but was unable to find it. When the conductor came up to him he informed him that he was unable to find the ticket, that he had either lost it or the porter had not given it back to him. He then went to the porter, who replied to his inquiry, that he had not taken the ticket; that he had seen the ticket, but appellee still held it in his hand. He thereupon returned and inquired of the conductor whether it would make any difference, as the porter had seen his ticket, and was informed by the conductor that he must either have the ticket or the money. Appellee replied to the conductor that he would get a duplicate ticket, if he had time. The conductor informed him that he would have about ten minutes until the train started. He then went to the appellant's agent, from whom he had purchased the ticket, and informed him of his difficulty. The agent expressed himself as being unable to give him a duplicate ticket, because he was charged by the company with all the tickets left with him, but said he would give him an order on the conductor, and then wrote on a slip of paper and gave him, the following:

"Mr. Ziezler (the name of the conductor), this is the gentleman who bought lower 4 to Crestline. If the ticket is presented by any one else, see to it.

"Kirkland, Ticket Agent."

Upon receiving this he re-entered the car and handed it to the conductor, who took it without saying any thing, and went himself to the ticket office. After returning, the conductor informed appellee that he could not let him ride on it, saying, "my orders are, I must have the money, a ticket, or a pass, and that is not a pass; that is an order." Appellee replied: "I pro-

pose to ride right here in this berth." The conductor answered that there was no use multiplying words, that the company would not accept that as a voucher from him, and that, unless appellee paid him, he should put him out of the car. Appellee replied that he should not go. After the cars had started, some twenty minutes, the conductor again returned and inquired of appellee what he was going to do. Appellee replied that he had paid for the ride and didn't propose to pay again. The conductor said that the company would not accept that as a voucher from him. Appellee observed, that if the conductor had to pay the one dollar and a half he would refund it to him. In reply to this, the conductor said he did not know appellee. When appellee remarked he would do nothing further, the conductor took appellee's boots, coat and satchel from berth No. 4, and carried them into the passenger car next in front, and, returning, said to appellee, "I will thank you to vacate this car." Appellee again replied that he had paid for a ride and expected to ride there. The conductor then took hold of his collar and led him out of the car, and from there he went into the passenger car. The next morning about eight o'clock the conductor went to appellee and gave him his original ticket, saying he had found it in the water-closet, and that if appellee would present it to the office in Chicago, he presumed they would pay him back the dollar and a half. Appellee told him he should not sell it so cheaply.

Appellee does not recollect that, in searching for his ticket, he examined the water-closet, but thinks that he otherwise made an ordinarily careful search for it. The conductor used no violence or rudeness towards him, and no offensive language, other than what has been stated. The passenger car into which he was removed was, in nowise objectionable, except that it was a passenger and not a sleeping car. Appellee suffered no physical injury, and no pecuniary loss whatever, beyond the price of the sleeping car ticket. While the colloquy was being had between him and the conductor, one of the passengers in the sleeping car offered to loan appellee the price of the berth,

but he declined accepting it, for the reason that he had money and could have paid for the berth if he had chosen to do so.

We are utterly unable, on this showing, leaving entirely out of view the mitigating evidence introduced by appellant, to see upon what hypothesis this assessment of $3,000 for damages can be justified.

Conceding it to be true, as claimed by counsel for appellee, that, under the circumstances, appellee was improperly ejected from the car, we fail to discover sufficient evidence that the act was so willful, malicious or wanton, on the part of the conductor, as to require the imposition of severe exemplary damages. Such damages should, in some degree, be proportioned to the magnitude and character of the wrong done. The punishment here does not fall upon the employee, by whose alleged wrongful act the appellant's liability is fixed, but upon the stockholders of the company. There is no evidence that shows that the conductor had been guilty of previous delinquency, which had been called to the attention of appellant's officers, or that they had knowledge of any thing in his character or qualifications which rendered him unfit for the place he held.

The wrong complained of not only resulted in no serious injury to appellee, but it was not accompanied by aggravating circumstances. No threats of violence and no offensive language have been found in the evidence. There was nothing in the character of the expulsion from the car which tended to humiliate or degrade, unless every expulsion must be held to have that tendency. Appellee's statement that he had bought a ticket entitling him to a berth, and that he subsequently lost it, was not denied, but it was claimed that the loss of the ticket imposed on him the obligation of purchasing another one or of paying the conductor the price in money. Appellee thought the assurances he furnished of his having done what he professed, were sufficient to entitle him to the berth, notwithstanding he could not produce the ticket. The conductor seemed to think nothing but the ticket or the money would enable him to make his returns properly to the company. Here, then, was

a mere difference of opinion upon a question about which all persons would not necessarily come to the same conclusion, and neither was willing to yield.

It is well recognized law, that carriers of passengers may lawfully require those seeking to be carried, to purchase tickets, when convenient facilities to that end are afforded by the carrier, to exhibit them to persons designated by the carrier for that purpose, and surrender them, after securing their seats in the car or other vehicle used for transportation, when required by the person in immediate charge of the transportation. Such requirements cause but little if any inconvenience to the public, and may be indispensable to enable the carrier to protect itself against loss through the knavery of dishonest employees. It was in evidence that appellant's rules required the conductor to take from persons desiring berths, only tickets, passes or money, and the reasonableness of these rules is not and cannot be questioned. There was evidence that another rule of appellant, requiring the conductor, when assigning a berth, to give the passenger a berth check which he was to finally give to the porter of the car, had not always been adhered to ; but we do not precisely understand how the disregard by an employee of a company of one rule, and especially when knowledge of that is not brought home to those intrusted with the power of removal and appointment of the particular employee, can give the public the right to insist that none of the company's rules for his conduct shall be enforced.

There is no dispute that the conductor was entitled to have from appellee either a ticket, a pass or money before giving him a berth. We think the better rule is, to require that, where the proof is clear and satisfactory, as it was in the present case, the applicant for the berth has bought his ticket but has lost it, and it is limited to a particular berth and trip; and the circumstances are such that it is reasonably certain the company cannot be defrauded by the ticket being in the hands of another, he should have the berth. But this is not so clear that we can say a company should be punished by large exemplary damages,

merely because the employee failed to recognize in the circumstances an exception to the general rule under which he was required to act, for much may be plausibly and forcibly urged against the exception. While the ticket was, by its terms, limited to a particular berth and date, there was nothing upon it by which to designate who was its lawful holder. Any person having it in possession would, *prima facie*, be regarded as its owner, and entitled to the designated berth. It does not conclusively follow that the purchaser of such a ticket at the company's office, merely because he is the purchaser, will use it himself. He may purchase for another, or, purchasing for himself, may subsequently change his mind and sell to another. A contest might thus arise between one claiming the berth because he had purchased the ticket, and another claiming it because he was the owner of the ticket, leaving the company to act at its peril in deciding between them.

It is, doubtless, impossible to adopt rules affecting the entire traveling public, which, in their impartial execution, will not, sometimes, incommode and annoy those whose intentions are honest, and who, aside from any code of restrictive rules or regulations, would deal fairly with the carrier. It is only because experience teaches that all, as well those employed by carriers as others, are not thus inclined, that such rules and regulations become necessary; but when it is conceded they are necessary, it follows that they should be enforced upon all alike. He who intends no wrong is not warranted in the assumption that the mere reasonable enforcement of such rules or regulations, is, in any sense, personal to himself, nor ought he to expect that an exception will be made in his favor, merely because of his conscious integrity.

In the present case, appellee seems to have conceived some personal indignity was intended to himself, and this view must have been strongly impressed on the jury. We do not so understand the evidence. We understand that an employee was simply endeavoring to comply with a reasonable regulation of the company by which he was employed, but that in doing so, he erred

in judgment on a question about which he might well honestly be mistaken.

Under the circumstances, we are of opinion appellee is only entitled to recover the price paid for his ticket, and a reasonable compensation for the trouble and inconvenience he suffered by being deprived of his berth in the sleeping car.

The judgment is reversed and the cause remanded.

*Judgment reversed.*