## Illinois Central Railroad Company v. James D. Louthan.

1. CARRIERS OF PASSENGERS—*Right to Require Tickets from Passengers Before Entering Cars.*—Carriers of passengers may lawfully require those seeking to be carried, to purchase tickets,·when convenient facilities to that end are afforded; to exhibit them to persons designated for that purpose, and to surrender them, after securing seats in the vehicle used for transportation.

2. RAILROADS—*Duties of Conductors of Passenger Trains.*—The conductor of a passenger train must necessarily have the supervision and control of the train, otherwise there would be no protection to the lives or comfort of the public travel. If he abuses his trust, or for any gross misconduct on the part of himself toward passengers, the company will be responsible.

3. SAME—*Care on the Part of Employes.*—The law requires the highest degree of care'on the part of all railroad employes on passenger trains, for the comfort and safety of passengers, and it is incumbent on them to be civil and decorous in their conduct toward them.

4. SAME—*Responsibilities of Passengers.*—It is the duty of passengers to observe proper decorum, and be submissive to all reasonable rules established by the carrier. The law will not permit a passenger to interpose resistance to every trivial imposition to which he may really feel or imagine himself exposed by the employes of a carrier. It is due to good order and comfort of the other passengers, that he should submit for the time being, and redress his grievances by civil action afterward.

5. PASSENGERS—*Rights of—Resistance.*—A passenger will be entitled to as much damage for a wrong or injury quietly endured as violently resisted. Whatever personal injuries may result from his resistance should be attributed to his own want of subordination, for which the law affords him no redress. A passenger has no more lawful right to redress by his own strong arm what he may deem an annoyance committed by a railroad employe, than he has to resist in like manner any other supposed invasion of his convenience or rights.

6. CERTIFICATE OF IMPORTANCE—*When it Will be Refused.*—When from the evidence as disclosed by the record the court is unable to discover that there are involved questions of law of such importance, either on account of principal or collateral interests, that they should be passed upon by the Supreme Court, and they have not been settled by that court, the certificate of importance will be refused.

**Trespass,** for assault and battery. Trial in the Circuit Court of Coles County; the Hon. HENRY VAN SELLER, Judge, presiding. Verdict and judgment for plaintiff. Appeal by defendant. Heard in this court at the November term, 1898. Reversed, and judgment for defendant in this court with a finding of facts. Opinion filed February 7, 1899. Certificate of importance denied, March 3, 1899.

CLARK & SCOTT, attorneys for appellant.

A railroad company has a right to make reasonable rules for the conduct of its employes and for the conduct of passengers. C., B. & Q. R. R. Co. v. McLallen, 84 Ill. 116. And it is the duty of the passenger to inform himself thereof. Southern Kansas R. Co. v. Hinsdale, 38 Kas. 507; 34 Am. and Eng. R. Cas. 356 and 391. And the purchaser of a ticket is bound to inform himself. McRae v. Wilmington R. Co., 88 N. Car. 526; 43 Am. Rep. 745. And one who neglects to inform himself has no greater right under his ticket than if he had acquired actual knowledge. Lake Shore, etc., R. Co. v. Rosenzweig, 113 Pa. St. 519; 36 Am. and Eng. R. Cas. 489.

JAMES W. & EDWARD C. CRAIG, attorneys for appellee.

The appellee is entitled to recover such damages as he sustained on account of the delay occasioned by the expulsion, and additional expense necessarily occasioned thereby, as well as reasonable damages for the indignity in being expelled from the train. Pa. R. R. Co. v. Connell, 127 Ill. 419.

The rule is well stated in the case of L. E. & W. R. R. Co. v. Christison, decided in this court (39 Ill. App. 495). It was there said: " It is objected that the court advised the jury, in substance, that if the defendant was liable the plaintiff was entitled to recover not only the actual damages sustained, but damages for the indignity he suffered, if any

such was shown by the evidence, and that in this there was error because damages for indignity are punitive in their nature, and whether punitive damages are allowable is for the jury, a plaintiff never being entitled to merely punitive damages, as a matter of right. Punitive damages are admissible where the injury is wantonly inflicted and are visited upon the wrong-doer by way of mere punishment, regardless of the amount of damages actually sustained. The indignity suffered by reason of the unlawful act of another, is a proper subject of compensation whether the act was wanton, malicious or willful, or whether it was merely negligent or mistaken. The suffering thereby occasioned is not to go unrequited, however, because there is no improper motive or purpose, and is a ground of damage quite apart from the matters which distinctly give rise to punitive damages." C. & A. R. R. Co. v. Flagg, 43 Ill. 364.

Mr. Presiding Justice Burroughs delivered the opinion of the court.

The appellee, as plaintiff, sued the appellant, as defendant, in the Circuit Court of Coles County, where at the first trial the jury failed to agree upon a verdict, and on the second trial by jury, a verdict was rendered for the plaintiff for $250 and judgment given him therefor.

The appellant brings the case to this court by appeal, and urges us to reverse that judgment on the grounds that the Circuit Court erred in its rulings on the evidence, its instructions to the jury, and in overruling the motion of the defendant for a new trial.

The declaration contained two counts, the first being in case, and charges that on May 31, 1896, the plaintiff, having purchased a ticket from Arcola to Champaign and return, started to board the train at Champaign, which the defendant, by its agent and servant, attempted to prevent him from entering, laid his hands on him, although he informed him that he had procured a ticket for passage on said train, and upon plaintiff's endeavoring to enter the train, the said servant violently seized hold of him, threw him down, and

willfully, wantonly and severely beat, bruised and wounded him, in the presence of other passengers.

The second count is in trespass, and charges that on May 31, 1896, the defendant, with force and arms, in the county of Champaign, by its agent and servant, willfully and wantonly assaulted the plaintiff, and beat, bruised and wounded him, and claimed $1,000 damages therefor.

The defendant interposed to the declaration a plea of not guilty, upon which issue was joined.

The evidence shows that James D. Louthan, the plaintiff, purchased a ticket from Arcola, Illinois, to Champaign, Illinois, and return, over the Illinois Central Railroad Company's road, and on May 31, 1897, he rode upon it from Arcola to Champaign. The "Wild West Show" was at the latter city that day, and it being also "Decoration Day," there was a large number of persons at the depot of the defendant, to take its train, which left Champaign about midnight, that night; and as it passed through Arcola, the plaintiff sought to take that train, to return on, and to use the return part of his ticket, which he seems to have had in his inside vest pocket.

When this train stopped at the station, at Champaign, a colored porter in the service of the defendant on the train was stationed on the platform, near the steps leading into the car, and demanded of persons wishing to get on the train to show him their tickets before getting on; and his request was being complied with by the persons he allowed to get on. The plaintiff, although requested by this porter to show his ticket the same as others, refused to show it, and against the protest of the porter, passed him and went up the steps onto the platform of one of the cars; and while going through the door of the car, some one took hold of him and a scuffle ensued, he insisting that he had a ticket and would show it when he got inside. He succeeded in getting inside, and when there, did show his ticket, and was permitted to ride to Arcola without further trouble. In this scuffle, it seems he was requested to show his ticket or get off the train; and while he claims that by reason of the

scuffle he was so shaken up as to make him feel the effects thereof for some time thereafter, no bruises or wounds of any kind were inflicted upon his person, nor was any of his clothing torn or injured.

There is a serious conflict in the evidence, as to whether the man on the train that engaged the plaintiff in this scuffle, was, in fact, one of the servants or employes of the defendant, and the evidence tends to show very strongly that he was not.

When fully considered, we are satisfied that the evidence fully established the fact that the servants and employes of the defendant did nothing more, under the circumstances, than try to prevent, in a reasonable way, the plaintiff from getting on to this train until he showed he had a ticket to ride thereon; and when he was politely requested by the porter to show his ticket before getting on the train, it was his duty to comply with the request; but as he refused to do so, and proceeded to get on the train, the employes were justified in using such force in reason, as would prevent his getting on; for it is " well recognized law, that carriers of passengers may lawfully require those seeking to be carried to purchase tickets, when convenient facilities to that end are afforded by the carrier, to exhibit them to persons designated by the carrier for that purpose, and surrender them after securing their seats in the car, or other vehicle used for transportation. Such requirements cause but little, if any, inconvenience to the public, and may be indispensable to enable the carrier to protect himself against loss through the knavery of dishonest employers." Pullman Palace Car Co. v. Reed, 75 Ill. 125.

The evidence clearly shows that the force used by the servants of the appellant in trying to prevent the plaintiff getting into the car, on account of his refusal to show his ticket before getting on, as requested, was not sufficient to prevent his going into the car as stated by himself; and the scuffle complained of could, and doubtless would, have all been avoided by his merely showing his ticket upon request, as was his plain duty under the law; and whatever indignity

he suffered from being taken hold of and pulled around was done in an honest effort to prevent his getting into the car of the train without first showing his ticket, as politely requested; and was the result of his own voluntary and wrongful act in violating a reasonable regulation, which the defendant had a right to make and enforce.    Pullman Palace Car Co. v. Reed, *supra*.

As the verdict and judgment in this case are, in our opinion clearly against the law and the evidence, it renders it unnecessary for us to discuss the rulings of the trial court upon the evidence or instructions that are complained of. And as the evidence in this record shows that the plaintiff in the court below (appellee here) failed to prove his case, under either count of his declaration, we will reverse the judgment appealed from, and not remand the case, and will render judgment in this court in favor of the appellant in bar of the action, and for the costs in this court, with findings of facts, as indicated below.    Judgment reversed.

FINDINGS OF FACTS TO BE INCORPORATED IN THE JUDGMENT.

The court finds from the evidence that the appellant, by its servants and agents, did not violently seize hold of and throw the appellee down, and willfully, wantonly and severely beat, bruise and wound him in the presence of other passengers, or otherwise wrongfully beat and bruise him, in manner and form as he, in his declaration, complains, but only attempted, without success, in a reasonable manner to prevent him from entering its train on account of his wrongfully refusing to show his ticket, upon reasonable request, before attempting to enter its train.

(Justice WRIGHT, having presided at the first trial of this case in the Circuit Court, took no part in disposing of this case in this court.)

MR. PRESIDING JUSTICE BURROUGHS delivered the opinion of the court, on application for a certificate of importance.

The appellee, by his counsel, has applied to us for a certificate of importance in this case.    And it is insisted there

are involved in this case questions of law of such importance, both on account of principal and collateral interests, that it should be passed upon by the Supreme Court; and "that there is no decision of the Supreme Court of the State of Illinois, as far as appellee or his counsel know, which decides the question in relation to the enforcement of the rule as to passengers displaying tickets before they enter the cars of a railroad company, and that question should be passed upon by that court."

We would not hesitate one moment to grant the certificate of importance applied for, if we believed that the question which counsel for appellee specially seeks to have passed upon by the Supreme Court in this case, had not in effect already been decided by that court, in the cases we will now refer to, viz. : In Pullman Palace Car Co. v. Reed, 75 Ill. 125, the court says : " It is well recognized law that carriers of passengers may lawfully require those seeking to be carried, to purchase tickets, when convenient facilities to that end are afforded by the carrier for that purpose, to exhibit them to persons designated by the carrier for that purpose and surrender them, after securing their seats in the car or other vehicle used for transportation." (Page 130 of the opinion.) In that case Reed had purchased a ticket for a particular berth in a sleeping car and had lost it after entering the car. He refused to pay a second time and was forcibly expelled, after producing proof that he had purchased a ticket for a berth. And the court says : " Under the circumstances, we are of opinion appellee is only entitled to recover the price paid for his ticket, and a reasonable compensation for the trouble and inconvenience he suffered by being deprived of his berth in the sleeping car." (See page 132 of opinion.) And it reversed a judgment rendered on a verdict awarding $3,000 damages in that case. In the case of Chicago, Burlington & Quincy R. R. Co. v. Griffin, 68 Ill. 499, the court says : " If a passenger pay his fare to a certain station, and the ticket agent inadvertently gives him a ticket to an intermediate station, the demand of a fare the second time by the conductor will be a breach of

the implied contract on the part of the company to carry
him to the proper station. By paying on such demand his
action will be as complete as· if he resists the demand and
suffers himself to be ejected, and his ejection in such case
will add nothing to his cause of action. It is his duty to
pay the fare demanded, and if the company fails to make
suitable reparation for the indignity, he can maintain his
appropriate action." In that case Griffin was forcibly
ejected from the cars by the employe of the railroad com-
pany, and his action was trespass to recover damages for
the indignity and injuries suffered thereby; and the court
found that the evidence showed that the agent of the rail-
road company had by inadvertence given him a ticket to an
intermediate station, when he had paid fare to the station
of his destination, and supposed he had been given a ticket
thereto, and so told the conductor when he demanded the
additional fare from the station to which the ticket read to
the station of his destination; upon refusal to pay the con-
ductor the additional fare, he forcibly put him off the train,
using no more force than was necessary to overcome the
resistance, but there was considerable violence on the part
of both. Under such state of facts the court used the lan-
guage above quoted, and on page 504 of the opinion further
says :

"The conductor must necessarily have the supervision
and control of the train, otherwise there would be no pro-
tection to the lives or comfort of the public travel. If he
abuses his trust, or for any gross misconduct on the part of
himself or other employes toward passengers, the company
will be responsible.

"The law requires the highest degree of care on the part
of all railroad employes on passenger trains, for the com-
fort and safety of passengers. It is incumbent on them to
be civil and decorous in their conduct toward them. But
like responsibilities rest upon the passengers. They must
observe proper decorum, and be submissive to all reasonable
rules established by the company. The law will not permit
a passenger to interpose resistance to every trivial imposi-
tion to which he may really feel or imagine himself
exposed by the employes, that must be overcome by coun-
ter force in order to preserve subordination. It is due to

good order and comfort of the other passengers, that he should submit for the time being, and redress his griev-. ances, whatever they may be, by civil action. A party will be entitled to quite as much damage for any wrong or injury quietly endured as if violently resisted; indeed the policy of the law ought to be to award him a higher measure of damages. Whatever personal injuries may result from his violence, should be attributed to his own want of subordi-nation, for which the law will afford him no redress. He has no more lawful right to redress by his own strong arm what he may deem an annoyance committed by a railroad employe, than he has to resist in like manner any other supposed invasion of his convenience or rights. The courts afford opportunity to redress every civil injury, no matter what its character, and the party must pursue the remedy given by law."

And in that case the court reversed a judgment rendered on a verdict awarding $1,500 as damages, saying:

"The damages awarded are out of all proportion to any injury inflicted upon appellee by the employes of the com-pany, other than what must be attributed to his own mis-conduct in opposing with force the demands made upon him by the conductor, which he must have known, if they were wrong, they arose out of honest mistake, either on his part or that of the ticket agent."

In the case of Chicago & Alton R. R. Co. v. Flagg, 43 Ill. 365, Flagg sued the company in an action on the case for wrongfully expelling him from one of its freight trains for not having a ticket. He tendered his fare when the ticket was demanded, but the conductor refused to receive it and put him off, in pursuance of a rule of the company requiring those riding on freight cars to have tickets, and prohibiting conductors from receiving cash fares. The court says:

"It is urged that the company must have power to make reasonable rules for the government of its trains. Undoubt-edly; and if a company deem it advisable to require tickets to be purchased before taking passage on certain classes of trains, its authority to do so must be conceded. If its rules in this respect are knowingly disregarded, a pas-senger may be required to leave the train at any regular station."

And in that case the court sustained a judgment on a verdict awarding $100 damages because Flagg offered to pay fare and accounted for not having a ticket by reason of there being no agent to sell him one at the station he got on, and further because the conductor put him off the train at a "water tank" instead of a regular station, as required by statute. And it also appeared that Flagg obeyed the conductor by getting off when requested, and made no resistance whatever. See also Illinois Central R. R. Co. v. Johnson, 67 Ill. 312; Same v. Cunningham, 67 Ill. 316; Terre Haute, Alton & St. Louis R. R. Co. v. Vanatta, 21 Ill. 188; Chicago & Alton R. R. Co. v. Roberts, 40 Ill. 503.

In the case of Pennsylvania R. R. Co. v. Connell, 112 Ill. 295, Connell sued the company to recover damages for a forcible expulsion from its car when he refused to pay his fare, but tendered a ticket issued to him by the Wabash railroad for a ride over the Pennsylvania railroad, which the conductor refused to receive, claiming his company had not authorized the ticket to be so issued. The trial court instructed the jury on the measure of damages that Connell was entitled to recover compensation for loss of time, or actual loss, as the result of being forcibly ejected from the train; also, such sum as will compensate for injuries to the person, resulting from being forcibly ejected from the train, and for bodily pain; and the court, at page 305 of the opinion, says:

"When the conductor demanded that appellee should pay fare or leave the train, he would have been justified in refusing to pay fare, and in leaving the train on the command of the conductor, and had he done so he would have received no personal injuries, and might then have brought his action and recovered as above stated (the amount of the cost of a ticket from the place he was ejected from the car to the place he had purchased his ticket, and damages for delay); but when he refused to leave the train and thus compelled the conductor to resort to force, he can not recover for an injury which he voluntarily brought upon himself. The conductor was ordered by his superior not to receive a ticket like the one presented. This order he was

I. C. R. R. Co. v. Louthan.

bound to obey, and so far as appears he acted in good faith, and when appellee was notified by the conductor that his ticket was not good, and would not be received, it was his duty to leave the train in a peaceable manner and hold the company responsible for the consequences, rather than resist or undertake to retain his place on the train by force. A train crowded with passengers, often women and children, is no place for a quarrel or a fight between a conductor and passenger, and it would be unwise and dangerous to the traveling public to adopt any rule which might encourage a resort to violence on a train of cars. The conductor must have the supervision and control of his train, and a demand on his part for fare should be obeyed, or the passenger should, in a peaceable manner, leave the train and seek redress in the courts, where he will find a complete remedy for indignity offered, and for all damages sustained."

In that case the court refers approvingly to the Griffin and Reed cases, *supra*, and reverses the judgment for $15,000 damages, for the reason that the instruction as to the measure of damages was erroneous. And it was also expressly held that the appellee could recover all damages he sustained by reason of the conductor wrongfully requiring him to leave the train when he was entitled to ride, but he could not recover for the force used by the conductor, and which the appellee induced by resisting being put off, unless the force used was more than necessary to put him off, or was wantonly or willfully inflicted.

Hence it seems to us that our Supreme Court has fully decided that in this State it is the duty of a passenger seeking to be carried on a train to conform to such reasonable requests as the conductor or servant in charge of the train makes upon him, when an honest difference arises between them as to his right to ride on such train; and in case such passenger forcibly resists the enforcement of such requests, he will be precluded from recovering any damages for injuries inflicted upon him by such forcible resistance, unless the conductor or servant uses excessive force, or acts in a wanton or willful manner.

From the evidence in the record in the case at bar it seemed to us that we so held; that the conductor in charge

of appellant's train did not use any excessive force nor did he act in a wanton or willful manner when he attempted to prevent the appellee from entering the car in question, without showing his ticket; and the appellant was in fact permitted to ride on the train to his destination, and if injured at all, as claimed, was so injured on account of the forcible manner he came onto the train against the reasonable resistance of the conductor, while in good faith attempting to prevent him from getting on the train, when he failed to show his ticket on request.

Believing the evidence in this record discloses the facts to be as found by this court and recited in its judgment, we are unable to discover that there are involved in this case, questions of law of such importance, either on account of principal or collateral interests, as that it should be passed upon by the Supreme Court, and have not yet been settled by that court; because we are of the opinion that every legal question arising on the facts in this case has been settled by that court in the cases above cited and quoted from, and is in accord with other high authority, notably: Frederick v. M. H. & O. R. R. Co., 37 Mich. 342; Townsend v. N. Y. C. & H. R. R. Co., 56 N. Y. 298; Hibbard v. N. Y. & E. R. R., 15 N. Y. 470; Bennett v. N. Y. C. & H. R. R. Co., 5 Hun, 600; Downs v. N. Y. & N. H. R. R., 36 Conn. 287; Shelton v. Lake Shore, etc., Ry. Co., 29 Ohio St. 214, and McGowen v. M. L. & T. R. & S. Co., 41 La. Ann. 732. (See 5 L. R. A. 817 and notes.)

We therefore refuse to grant the certificate of importance as petitioned for.

Mr. Justice HARKER concurs.

Mr. Justice WRIGHT took no part.