ARMSTRONG *v*. PULLMAN Co.

[66 South. 283.]

1. CARRIERS. *Carriage of passengers. Loss of tickets. Ejection of passenger. Instructions. Punitive damages.*

    The conductor of a Pullman car is not called upon to accept the statement of a would be passenger thereon, even though supported by the statement of another passenger, that he had purchased a ticket and had lost it, and the company is not liable for the refusal of accommodations to such passenger, if such refusal was reasonable.

2. CARRIERS. *Ejection of passengers. Instructions.*

    An instruction that a passenger who had lost his sleeping car ticket could not recover for the refusal of accommodations to him, if such refusal was reasonable, although the jury might believe the conductor might have given the passenger a berth as a matter of courtesy, is not made erroneous by the reference to the giving of a berth by courtesy.

3. CARRIERS. *Ejection of passengers. Punitive damages.*

    It was not error to refuse an instruction on punitive damages, where the conductor refused to permit a passenger who had lost his ticket, to occupy a lower berth in a sleeping car, because the conductor's diagram showed that such berths were all taken, but offered him an upper berth, which the passenger refused to take.

APPEAL from the circuit court of Hinds county.

HON. W. A. HENRY, Judge.

Suit by John W. Armstrong, against the Pullman Company. From a judgment for defendant, plaintiff appeals. The facts are fully stated in the opinion of the court.

*Flowers, Brown & Davis,* for appellant.

A sleeping car company will be held to the same degree of liability as a common carrier. *Pullman Company* v. *Laurence,* 74 Miss. 782; *Pullman Company* v. *Kelly,* 86 Miss. 88; Section 195, Constitution 1890.

A sleeping car company cannot refuse to allow a passenger to pay for and occupy a berth simply because that passenger had misplaced his ticket when from all the facts and circumstances it would be apparent to a reasonable man that he had purchased a ticket for the berth. *K. C. M. & B. Co.* v. *Riley,* 68 Miss. 765, 9 So. 443; *A. & V. Ry.* v. *Holmes,* 75 Miss. 371, 23 So. 187; *Pullman Company* v. *Reed,* 75 Ill. 125.

*R. H. & J. H. Thompson,* for appellee.

The appellant's attorneys in their brief, put the case of *Pullman* v. *Reed,* 75 Ill. 125, 20 Am. Rep. 232, to great stress, but fail to advise the court that, as in the Riley and the Holmes cases, the passenger in that case had evidence other than the verbal statement of himself and his companion showing reasonably the truth of the statement made by him that he had lost his ticket. Such evidence in *Pullman* v. *Reed* was a note written by the agent who sold the passenger this ticket, directed to the conductor on the train and quoted in the opinion of the court as follows: Mr. Zeizler (the name of the conductor), this is the gentlemen who bought lower 4, to Crestiline. If the ticket is presented by anyone else, see to it. Kirkland, Ticket Agent. And after receiving the note from the passenger, the conductor went himself, to the ticket office and had a personal interview with the com-

pany's agent who sold Reed, the plaintiff in that case, the ticket. The evidence in *Pullman* v. *Reed,* was not only a written identification by the agent who sold the ticket, but was such as the conductor gained by personal interview with the agent (not a third party or a stranger), a representative of the company itself, and besides the conductor's own porter, a servant of the company, had just seen the ticket. The court said in *Pullman* v. *Reed*:

"It is well recognized law that carriers of passengers may lawfully require those seeking to be carried to purchase tickets when convenient facilities to that end are afforded by the carrier, to exhibit them to person designated by the carrier for that purpose, and surrender them after securing their seats in the car or other vehicle for transportation, when required by the person in immediate charge of the transportation. Such requirements cause but little, if any, inconvenience to the public and may be indispensable to enable the carrier to protect itself against loss through knavery of dishonest employees. It was in evidence that appellant's rules require the conductor to take from persons desiring berths only tickets, passes, or money, and the reasonableness of such rules is not, and cannot be, questioned."

The court also recognized in that case the distinction between ordinary railroad tickets and sleeping car tickets, which call for particular space in the car, and too, the possibility of a contest arising, in case a ticket is lost and presented by another, between the one claiming the space because he purchased the ticket and the other claiming it because he held that ticket. In this connection it will be noted that in *Pullman* v. *Reed* the note from the ticket agent to the conductor, specifically described the space the passenger had bought, while here, according to Hunt's testimony which the jury accredited, Armstrong demanded berth 7 or 8, for neither of which he had contracted. The comments made in our original

printed brief on the cause decided by this court, *Kansas City, etc., R. Co.* v. *Riley,* 68 Miss. 765, and *Alabama etc., Ry. Co.* v. *Holmes,* 75 Miss. 371, and the limitations put upon them in *Mitchell* v. *Southern Ry. Co.,* 77 Miss. 917, are quite applicable to *Pullman* v. *Reed,* 75 Ill. 125, 20 Am. Rep. 232, and their application to the case last cited is made apparent by the facts touching that case already hereinbefore stated.

The suggestion of appellant's counsel that the corroborative evidence of the truth of the passenger's statements in the Riley case and in the Holmes case, the wrong end of a return ticket in the one and the baggage check and waybill in the other, could easily be used to impose upon a railroad company, is without force, unless they mean to discredit the authority of those cases. It will be observed, however, that the corroborative evidence, as was the case in *Pullman* v. *Reed,* eminated from the defendant in each of the cases, as in this one, there was no such corroborative evidence.

REED, J., delivered the opinion of the court.

During the afternoon of March 7, 1911, in the city of St. Louis, appellant purchased a ticket which entitled him to occupy lower berth No. 6, car No. 103, from St. Louis to Memphis, on the train of the Illinois Central Railroad Company, leaving at eleven twenty p. m. of that day. He boarded the train shortly before it departed. He was unable to produce his ticket. He had left it in the pocket of a coat which he was wearing when he purchased it, and which he afterwards took off and packed in his trunk. He explained this to the Pullman conductor, and went to the baggage car in an effort to reach his trunk and obtain the ticket, but he was unable to locate the trunk. The conductor refused to permit him to occupy a lower berth in the car, because there was an outstanding ticket for every lower berth. Appellant offerred to pay for the berth which he claimed. The con-

ductor refused to accept the amount, on the ground that all lower berths had been disposed of. He offered to sell appellant an upper berth, but this was declined. Appellant thereupon went into a day coach and rode therein to Memphis.

Appellant was corroborated in his testimony that he had purchased the ticket by the testimony of a companion, Mr. Harris, who was with him at the time. It seems that two tickets were purchased, one for appellant and one for Mr. Harris. Appellant's testimony that he explained to the conductor that he had so purchased the ticket, and that it was for lower berth No. 6, was also corroborated by the testimony of Mr. Harris, and that of another traveling friend, in the evidence as to this. The conductor testified that appellant never told him that he had purchased a ticket to lower 6, but claimed that he had purchased ticket for either lower berth No. 7 or 8, both of which berths his diagram showed had been sold and were subject to be occupied.

Appellant filed his suit against appellee, claiming therein that he "was put to very great inconvenience and mental and physical discomfort and trouble" by having to sit up all night in a crowded day coach at a time when he had only recently recovered from a spell of sickness, and was not then well, and demanded damages in the sum of two thousand dollars. The plea of general issue was interposed by appellee, and the case was submitted to the jury on the question of actual or compensatory damages. The jury returned a verdict in favor of the defendant.

Appellant, in this appeal, complains that the trial court erred in granting the defendant the following instruction:

"The court instructs the jury that, unless they believe from a preponderance of the evidence that Conductor Hunt unreasonably refused to respect plaintiff's assertion of a right to a berth, they will find for defendant,

although they may believe from the evidence that the conductor might have given plaintiff a berth as a 'matter of courtesy.''

Appellant cites to sustain his position the cases of *K. C., M. & B. Railway Co.* v. *Riley,* 68 Miss. 765, 9 So. 443, 13 L. R. A. 38, 24 Am. St. Rep. 309, and *A & V. Railway Co.* v. *Holmes,* 75 Miss. 371, 23 So. 187. In both of these cases there was evidence other than the verbal statement to corroborate the explanation of the passenger. In the Riley case the outgoing conductor had by mistake taken up the wrong end of the round-trip ticket. The passenger had in his possession the other end of the ticket, which he actually showed to the conductor on his return trip. The court decided that this was corroboration of his statement to the extent that it was made thereby a reasonable explanation not to be ignored by the conductor.

In the Holmes case the court held that the conductor should not have ignored and refused to receive the explanation of a passenger of an error in her ticket, where her statement was substantiated by her baggage check and the waybill for its transportation, it being the rule of the railroad to check baggage only upon a proper ticket. In that case the agent of the railroad company, instead of issuing a ticket to Meridian, as requested, through error, issued it to Vicksburg.

It will be noted that in both of these cases the errors were made by the agents of the railroad companies; the passengers were not at fault. In this case the fault or failure, which resulted in appellant being unable to present his ticket upon demand, was not that of appellee, the Pullman Company, but was that of appelant. Appellee was in no way to blame for appellant's inability to produce his ticket.

In the case of *Mitchell* v. *Railway Co.,* 77 Miss. 917, 27 So. 834, it was held that a passenger, upon his refusal to pay his fare, could be ejected from the cars, after the

expiration of his ticket over a route including several connecting carriers, the ticket showing upon its face the exact date of expiration, giving ample time to make the journey. It was further held in that case that a conductor is not required to accept the uncorroborated statement of a person claiming to ride upon a defective, expired or lost ticket.

In delivering the opinion in the Mitchell case, Judge Calhoon referred to the Riley and Holmes cases, and stated that those cases "have carried the doctrine as far as it can be pressed without crossing the danger line of injustice to railroad corporations." We approve both of those cases, because in each of them the passenger had and exhibited to the conductor, evidence showing reasonably the statement to be true. Here there is nothing to support the oral statement but the mere production of the ticket absolutely void on its face.

In this case we have the mere statement of the passenger. A repetition of the statement of the same fact by another passenger, under circumstances shown herein, where the statement is uncorroborated by other evidence, and the integrity thereof is questioned by the conductor, will not require him to accept the statement as a satisfactory explanation.

We find in the case of *Pullman Co.* v. *Reed*, 75 Ill. 125, 20 Am. Rep. 232, cited by counsel for appellee, that there was other evidence besides the statement by the passenger of the loss of the ticket. He had a slip of paper from the ticket agent to the conductor identifying him as the purchaser of the ticket, and he had shown his ticket to the porter upon entering the car and was shown to his berth. He lost it after entering the car. We quote from the opinion in that case as follows:

"It is a well-recognized law that carriers of passengers may lawfully require those seeking to be carried to purchase tickets, when convenient facilities to that end are afforded by the carrier, to exhibit them to persons

designated by the carrier for that purpose, and surrender them, after securing their seats in the car or other vehicle used, for transportation, when required by the person in immediate charge of the transportation. Such requirements cause but little, if any, inconvenience to the public, and may be indispensable to enable the carrier to protect itself against loss through the knavery of dishonest employees. It was in evidence that appellant's rules required the conductor to take from persons desiring berths only tickets, passes, or money, and the reasonableness of these rules is not and cannot be questioned."

There is a difference between the right of a passenger purchasing an ordinary railroad ticket, and the right which he obtains in buying a sleeping car ticket. The railroad ticket entitles him to ride on a train of the company. A sleeping car ticket secures for him a designated place in a certain car, which is reserved for his occupancy. If a railroad ticket should be lost, another ticket could be sold in its place or cash fare accepted, and no interference would result with the right of another passenger. This will not be so where a sleeping car ticket is lost. A third person may have rights to be considered. The sleeping car ticket is not simply evidence of the passenger's right to ride on the train or in any car of the train, but it reserves for his use a designated part of the car known as a berth.

The ticket filed as an exhibit with appellant's testimony shows that a part thereof is to be held by the passenger to designate the very berth which he has purchased. This part contains the following words: "To be retained by passenger to identify accommodations indicated on the accompanying ticket." All these things must be borne in mind when we are considering the question of the duty of a sleeping car conductor to require a reasonably sufficient proof by the passenger of his right to occupy a certain berth. It rested upon appellant, as plaintiff in the trial of his case, to show by a preponder-

ance of the evidence that the conductor was unreasonable in refusing to respect appellant's assertion of a right to a berth.

The instruction will not be condemned by the reference therein to the conductor giving appellant a berth as amatter of courtesy. This reference will not affect the statement of the proof required of appellant to sustain his case. The reasonableness of the conductor's action in refusing to accept appellant's explanation of his failure to produce his ticket was properly presented to the jury for their decision. By their verdict they decided that he was not unreasonable in refusing.

We do not see any error in the trial court's refusing to grant appellant an instruction on punitive damages under the facts and circumstances of this case. *Pullman Co.* v. *Reed, supra.*

*Affirmed.*

SMITH, C. J. (concurring). I do not think that the conductor of a Pullman car is called upon to accept the statement of a would-be passenger thereon, even though supported by the statement of other passengers, that he had purchased a ticket and had lost it, and am therefore of the opinion that the appellee was entitled to the peremptory instruction requested. This being true, it follows, of course, that I concur in the result reached.