## August Malmgren, Appellant, v. Aurora, Elgin & Chicago Railroad Company, Appellee.

## Gen. No. 6,014.

1. CARRIERS, § 525*—*when plaintiff may be cross-examined in action for ejectment as to previous ejectment.* Where the declaration in an action against a street railroad company for the ejection of a passenger, alleges in different counts two ejections on the same day, and at the trial the plaintiff limits his evidence to the second act, *held* that it was not reversible error to permit him to be cross-examined as to the previous ejection, under the circumstances.

2. CARRIERS, § 522*—*when plea estops carrier from asserting that ejected person was not passenger.* Where the declaration in an action for the ejectment of a person from a street car, alleges that the plaintiff while lawfully a passenger thereon and while conducting himself in a peaceable and orderly manner, was, without right or provocation, ejected by the servants of the carrier with

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

force and arms, and wantonly, wilfully, carelessly and negligently assaulted, to which the defendant pleaded *molliter manus inposuit*, to which the plaintiff replied that the defendant of its own wrong, and without the cause alleged in its plea, committed the several trespasses alleged, an issue was tendered as to whether more force than necessary was used, and the defendant cannot assert that the plaintiff was not a passenger, was not lawfully on the car, and that he was rightfully ejected.

3. CARRIERS, § 262*—*when duty to carry cannot be enforced by refusal to pay fare.* Where a street railroad company refused to carry a passenger to a point to which it was legally bound to take him, he cannot enforce such duty under a demand to carry him to his destination by refusing to pay fare after ejection from another car, since it was his duty to pay the demanded fare or leave the car on request, and to pursue an orderly legal remedy.

4. CARRIERS, § 503*—*when person ejected for refusal to pay illegal fare entitled to damages.* A street car passenger cannot recover for injuries received when ejected from a car, in the absence of wilfulness, wantonness or the exercise of unnecessary force by the carrier's servants, where on a car stopping short of its destination, he refused to leave until the car returned to its barn, when he boarded another car and demanded to be carried to his destination, and was ejected for refusing to pay his fare.

5. CARRIERS, § 526*—*sufficiency of evidence to show use of unnecessary force in ejecting passenger.* The evidence in an action for the ejectment of a person from a street car for nonpayment of an alleged illegal fare, *held* to show that no unnecessary force was used by the servants of the carrier.

6. APPEAL AND ERROR, § 1520*—*when judgment not reversed for error in directing a verdict.* Even though the trial court erred in directing a verdict on conflicting evidence, the judgment will not be reversed on that account, where the case was such that if a contrary verdict had been rendered the Appellate Court would have reversed the judgment with a finding of facts.

Appeal from the City Court of Aurora; the Hon. EDWARD M. MANGAN, Judge, presiding. Heard in this court at the October term, 1914. Affirmed. Opinion filed March 9, 1915.

MIGHELL, GUNSUL & ALLEN, for appellant.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

A. J. HOPKINS, D. J. PEFFERS, J. S. HOPKINS and R. J. WING, for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.

On Sunday August 17, 1913, at some time near noon, August Malmgren was forcibly removed from a street car operated by the Aurora, Elgin & Chicago Railroad Company. He brought this suit to recover damages for the injuries he claimed to have sustained thereby. There was a jury trial, and at the close of plaintiff's evidence a verdict was directed and rendered for defendant. A motion by plaintiff for a new trial was denied, defendant had judgment and plaintiff appeals.

In fact, appellant was ejected twice on that day from cars operated by appellee. The testimony of plaintiff, in chief, was confined to the second event, about noon. Appellee cross-examined appellant as to the first expulsion that day and appellant argues that this was error. Appellee seeks to justify this on the ground that one of the two counts of the declaration is for the first expulsion and the other for the second. In common-law pleading a plaintiff often files more than one count for the same cause of action, stating it differently in the second count from the first, and in the second count avers that this was another car or train, or accident, or promissory note, when in fact there was but one cause of action, and this is recognized practice. Therefore, notwithstanding the use of the word "other" in the second count, appellant had a right to confine his attempted recovery to the second assault and to rely upon each count of the declaration as describing that assault. It is the general American rule that the cross-examination shall be confined to the direct. Jones on Evidence, sec. 820, and following sections. Yet more latitude is allowed in the cross-examination of a party, and also such a cross-examination may be allowed as tends to show the interest of the witness, and such prior events may often be

gone into if they explain or lead up to the occurrence which is the cause of the suit. *Hanchett v. Kimbark,* 118 Ill. 121, and other cases. Besides, this case was not decided by the jury, but by the court, and it is obvious that the action of the court would not have been different if the cross-examination had not covered the prior event. Certainly there was no reversible error in permitting that cross-examination in this case.

Appellee then operated a street railway known as the "Downer Place Line." Downer Place runs east and west. At LeGrande Boulevard the railway turned south upon that street. The first street south of Downer Place was Garfield Avenue, the next, Park Manor, and the third, Kensington Place. Garfield Avenue was the end of actual operations on that line except as hereinafter stated. The company had laid ties and rails to extend said track to Kensington Place. At remote intervals of time a car had gone south beyond Garfield Avenue and had discharged passengers at Kensington Place. At that time appellant lived near the corner of LeGrande Boulevard and Kensington Place. A number of other people lived in that vicinity. On Sunday morning appellant took the car at Garfield Avenue and went down town and bought a newspaper and then took a return car and, as he paid his fare, he told the conductor he wished to go to Kensignton Place. The conductor made no reply. The car stopped at Garfield Avenue and notice was given for every one to get out, and soon thereafter the car started on its return trip to the center of town. Appellant stayed on the car. So did a number of other persons, who lived in his vicinity. The conductor called upon appellant for his fare and he refused to pay, saying that he had told the conductor that he wanted to go to Kensington Place and that he would not get off until he was taken to that street. The same thing occurred with other people who lived in his vicinity. The conductor finally, during his return trip, reached the barn and took the car into the barn and left it there, and

all those who had refused to pay left and went away except appellant. Appellant boarded another car bound down town and refused to pay, and before he reached that end of the line the conductor, the motorman and two policemen took him off the car, against his utmost resistance, during which removal a window in the vestibule was broken and appellant received some wounds and bruises. He then took another outward bound car with another conductor, paid the conductor his fare, saying he wished to go to Kensington Place, and when Garfield Avenue was reached and the passengers were notified that that was the end of the route, he and one friend remained on the car. Soon after the car started back the conductor asked appellant for his fare. He refused to pay, on the ground that he had paid to go to Kensington Place and that he would not get off until the car took him there. The conductor told him that he must pay or leave the car. He refused to do either. The conductor stopped the car, called the motorman and two passengers to his assistance, and they removed appellant from the car. Appellant's counsel say that he made but a passive resistance. He did not strike or kick any one and no one struck or kicked him, but he made an exceedingly active resistance. The aisle in the car was narrow. He caught hold of the seat handles and held on with all the strength he had. He caught his foot around the supports of the seats. It was an old car and the doors and vestibule were narrow. He braced himself against them, and four men could not get hold of him very well, and they had very great difficulty in removing him. In his testimony as to his former removal from the car he manifested pride in his strength and in the inability of the conductor to loosen his hold upon the seats. At this second occurrence a window in the vestibule was again broken. After they had him in the door of the vestibule he was able to place his arms in such a position that it was very difficult to get him out. Finally, the conductor, who stood upon

the ground, caught hold of his legs and pulled them out from under him and he fell on the car step and was then removed. Two of the men held him on the ground until the car started and then ran and caught the car. He had not had his coat on while in the car. It was thrown out to him after the car started. He walked home, attended to some matter about his horses, went to bed, sent for a doctor and was treated several times, and then began this suit. The doctor found scratches and bruises on various parts of his face and body, especially upon his back, and two cuts upon his back, and extracted two pieces of glass from his back.

The declaration charged that appellant was a passenger on said car and that, while he was lawfully thereon and still a passenger thereon and conducting himself in a peaceable and orderly manner, appellee's servants with force and arms, without right or provocation, wantonly, wilfully, carelessly and negligently assaulted him. Appellee contends that he was not a passenger and was not lawfully on the car, and that what appellee did was not done without right, nor wantonly and wilfully, but in discharge of a legal right, and that therefore plaintiff cannot recover because he has not proved his declaration. This position would have great force if appellee had filed only the general issue, but it also filed a plea of *molliter manus imposuit,* to which appellant replied that appellee of its own wrong, and without the cause alleged in said second plea, committed said several trespasses; and thereby an issue was tendered whether more force was used in ejecting appellant from said car than was necessary, and appellant strongly contends that upon that question of fact the evidence required that the cause should be submitted to the jury.

The law applicable to this case has been stated and applied in *Chicago, B. & Q. R. Co. v. Griffin,* 68 Ill. 499; *Pullman Palace Car Co. v. Reed,* 75 Ill. 125; *Pennsylvania R. Co. v. Connell,* 112 Ill. 295; *Kiley v. Chicago City Ry. Co.,* 189 Ill. 384; and *Pennington v.*

*Illinois Cent. R. Co.,* 252 Ill. 584; and by the Appellate Courts of this State, in the First District, in *North Chicago St. R. Co. v. Olds,* 40 Ill. App. 421, and 64 Ill. App. 595; by this court in *Chicago, B. & Q. R. Co. v. Wilson,* 23 Ill. App. 63, and *Chicago, R. I. & P. Ry. Co. v. Brisbane,* 24 Ill. App. 463, and by the Fourth District in *Chicago & A. R. Co. v. Willard,* 31 Ill. App. 435. In *Kiley v. Chicago City Ry. Co., supra,* many cases are cited from other jurisdictions. In *Chicago, B. & Q. R. Co. v. Griffin, supra,* there was an honest difference of opinion between the conductor and the passenger as to the destination of the ticket which the latter had surrendered to the former. The passenger refused to pay and the conductor and his assistants ejected him and he re-entered the car, in which were ladies, and undertook to pay his fare, but with obscene and abusive language, and the conductor returned his money and again ejected him from the train, and there was considerable violence by both parties. After stating that it was the duty of the passenger to pay the fare demanded, and that he, could maintain an appropriate action for the indignity to which he had been exposed, if he had in fact once paid his fare, the court further said:

"The law will not permit a passenger to interpose resistance to every trivial imposition to which he may really feel or imagine himself exposed by the employees, that must be overcome by counterforce in order to preserve subordination. It is due to good order and the comfort of the other passengers, that he should submit for the time being, and redress his grievances,. whatever they may be, by a civil action. A party will be entitled to quite as much damage for any wrong or injury quietly endured as if violently resisted; indeed, the policy of the law ought to be to award him a higher measure of damages. Whatever personal injuries may result from his violence, should be attributed to his own want of subordination, for which the law will afford him no redress."

In *Pullman Palace Car Co. v. Reed, supra,* appellee

had lost his sleeping car ticket and refused to pay again and the conductor carried his boots, coat and satchel into the next car and directed him to vacate the sleeping car, and upon his refusal took him by the collar and led him into the next car and he had to ride that night without sleeping car accommodations, and he sued the company, and it was held that he was only entitled to recover the price paid for his sleeping car ticket and a reasonable compensation for the inconvenience he suffered from being deprived of his berth. In *Pennsylvania R. Co. v. Connell, supra,* the controversy arose between the conductor and a passenger concerning his ticket, in which the passenger seems to have been correct. The conductor refused the ticket, demanded pay, and when that was refused, requested the passenger to leave the train. The passenger refused and the conductor put him off, using such force as seemed necessary for that purpose. The passenger sued and recovered large damages. The trial court instructed the jury that the plaintiff was entitled to recover compensation for loss of time and compensation for injuries to his person resulting from being forcibly ejected from the train, and for bodily pain. It was held that he was entitled to damages for the delay and additional expenses occasioned thereby and reasonable damages for the indignity of being expelled from the train, but not for his personal injuries, unless the expulsion was malicious and wanton, and that it was his duty to have left the train in a peaceable manner when requested by the conductor, or to have paid his fare and sought redress in the courts. In *Pennington v. Illinois Cent. R. Co., supra,* the plaintiff was ejected from a suburban train, after a controversy over his ticket, which had expired, and a refusal by the plaintiff to pay fare. Plaintiff claimed that he was unable to find the station for some time after he left the train, and he froze his hands and feet and was made sick. The court said:

"It is clear that the conductor of the defendant's

train was well within his legal rights in requiring the plaintiff to pay his fare from Douglass station to Kensington station or to leave the train, and as he was guilty of no legal wrong in requiring the plaintiff to leave the train at Hyde Park there was no legal liability resting upon the defendant by reason of his ejection at that station, and there can be no recovery for an injury received by plaintiff in consequence of his being required to leave the train at Hyde Park.''

Applying the rules laid down in these cases, it is clear that appellant here could not in this manner force appellee to carry him to Kensington Place; that if it owed him a legal duty to carry him there and refused to do so, the law afforded him a remedy by action and he could not lawfully undertake to enforce that right by the course he here pursued; that it was his duty to pay the fare when demanded or to leave the car when requested by the conductor; and that he has no cause of action to recover for the personal injuries which he sustained because of his forcible resistance to the directions of the conductor, unless they were wilfully and wantonly inflicted by the servants of appellee, or appellee used more force than was necessary to get appellant off the car. The servants of appellee did not strike appellant nor kick him, and he was so strong and his resistance so extreme and so constant that it was with great difficulty that he was removed. There is no evidence that the servants of appellee exhibited any anger or wanton spirit, and we are of the opinion that the jury could not reasonably have found that they used more force than was necessary to remove appellee. There are single sentences in the evidence by appellee himself which might indicate that he was used more harshly than was necessary, but when the evidence of his personal friend and the other witnesses whom he called is considered, no such result is fairly reached therefrom. If it be said that the trial judge may not weigh the evidence upon a motion to direct a verdict and therefore should have submitted this evidence to the jury, still in this court

we may weigh the evidence; and in this case, if appellee had introduced no testimony and there had been a verdict for appellant as compensation for the injuries he suffered, we should have felt bound to reverse the judgment without remanding the cause, and it would be an anomaly for us to send this case back to permit a verdict to be rendered which we would not sustain. Appellant undertook to take the law into his own hands and to enforce his alleged rights by a wrongful, violent resistance, and he brought his injuries upon himself. Substantial justice has been done. Cars and trains could not be operated nor the reasonable comfort and convenience of other passengers secured if such conduct was encouraged by permitting the maintenance of such an action under such circumstances. The judgment is affirmed.

*Affirmed.*